UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-23138-Civ-GOLD
MAGISTRATE JUDGE P.A. WHITE

EDSON A. VILME,                     :

    Petitioner,               :

v.                                   :          <u>REPORT OF</u>

                     :          <u>MAGISTRATE JUDGE</u>

WALTER M. McNEIL,                   :

    Respondent.               :

_____ :

## I. <u>Introduction</u>

Edson A. Vilme, a state prisoner confined at Dade Correctional Institution at Florida City, Florida, has filed a <u>pro se</u> petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, attacking his convictions and sentences entered in Case No. 00-16848 in the Circuit Court of the Eleventh Judicial Circuit of Florida at Miami-Dade County.

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

For its consideration of the petition (DE# 1), the Court has the petitioner's response to an order regarding the limitations period (DE# 6), and the respondent's response to an order to show cause with multiple exhibits (DE# 9, 11, 12). Subsequent to the respondent's filing of his response, Vilme filed a motion to stay (DE# 13), which has also been referred to the undersigned (DE# 14).

## II. <u>Claims</u>

Vilme challenges his convictions on nine grounds of trial

court error, five grounds of ineffective assistance of trial counsel, two grounds of ineffective assistance of appellate counsel, one ground of prosecutorial misconduct, and one ground of improper charging document. Specifically, he claims that:

1.    The trial court in violation of his due process rights improperly prohibited defense counsel from using a hypothetical question regarding a defense theory during voir dire.

2.    He received ineffective assistance of trial counsel, because his lawyer conceded his guilt during opening statement and closing argument.

3.    The trial court in violation of his due process rights denied his requested jury instructions as to attempt and independent acts and modified the standard jury instruction on attempt.

4.    He was denied a fair trial by the prosecutor's improper comments made during closing argument.

5.    The trial court in violation of his right to a fair trial refused to specifically re-instruct the jury on the "single defendant, multiple counts" instruction."

6.    He received ineffective assistance of trial counsel, because his lawyer failed to strike prospective jurors for cause.

7.    He received ineffective assistance of trial counsel when counsel failed to call co-defendant Cajuste as a defense witness.

8.    The trial court in violation of his due process rights denied his request for an independent act instruction.

9.    He received ineffective assistance of trial counsel when counsel stipulated to competency findings and a discovery violation in his absence.

10.   The trial court violated his rights to due process when it denied his request for severance.

11.   The trial court judge improperly inquired into attorney-client privilege in violation of his rights to due process.

2

12.   The trial court denied his right to due process when it pressured him to make a decision regarding his right to testify or remain silent.

13.   The trial court violated his due process and confrontation rights when it failed to grant suppression of the identification and statement that resulted in an illegal arrest.

14.   The trial court denied his right to due process when it denied his motion for a new trial.

15.   He received ineffective assistance of trial counsel, because his lawyer failed to request an instruction on duress as a possible defense.

16.   He was denied due process when Count II and Count IV of the Indictment were wrongfully classified.

17.   He received ineffective assistance of appellate counsel, because his lawyer failed to raise on direct appeal the issue that the trial court committed fundamental error by not instructing the jury as to the underlying offenses of felony murder, and by not instructing the jury as to first degree premeditated murder.

18.   He received ineffective assistance of appellate counsel, because his lawyer failed to raise on direct appeal the issue that the trial court committed fundamental error by entering a judgment of conviction for first degree murder solely based on a general jury verdict.

### III. Procedural History

Vilme and two co-defendants, Michael Cajuste and Claudia Salomon, were charged by Indictment with the offenses of first degree murder (Count I), attempted felony murder with a deadly weapon (Counts II and III), and attempted armed robbery of the owners/custodians of the Sea Linton[1] offices (Count IV).[2] (DE# 11;

---

[1]The victim business has been referred to in the state court proceedings as both the "Sea Linkton" and "Sea Linton."

[2]In brief, the charges arose out of the attempted armed robbery of a shipping company, Sea Linton, during which two individuals were shot during the robbery and escape (i.e., Mario Mentor and Odrof Augustin, respectively), and another was nearly struck by the getaway car (i.e., Thomas Smith, Sr.).

App. B). The case proceeded to trial before a jury after which Vilme was found guilty of first-degree felony murder of Mario Mantor (Count I), attempted felony murder with a firearm of Ordrof Augustin (Count II), and attempted armed robbery (Count IV). (Trial Transcript at 1572-73).[3] See also Verdict. (DE# 11; App. D). The jury found him not guilty of the attempted murder of Tom Smith, Sr. (Count III). Id. at 1573. See also Verdict. The trial court adjudicated Vilme guilty of the offenses for which he was found guilty and he was sentenced to a term of life imprisonment as to the felony murder and attempted murder convictions and a concurrent term of thirty-years' imprisonment as to the attempted robbery convictions. (DE# 11; App. E). Vilme prosecuted a direct appeal from his convictions, raising the identical issues presented in this federal proceeding as claims one through five. (DE# 11; App. E). The convictions and sentences were per curiam affirmed by the Florida Third District Court of Appeal in a decision without written opinion. Vilme v. State, 896 So. 2d 767. (Fla. 3 DCA 2004).

Approximately eight months after the direct appeal proceedings had concluded, Vilme sought pro se postconviction relief, filing a motion pursuant to Fla.R.Crim. P 3.850 in which he raised the same claims included in the instant petition as grounds six through sixteen. (DE# 11; App. I). The state filed a thorough response, arguing that the motion should be denied. (DE# 11; App. J). After Vilme had filed his reply and the state filed a response in opposition, the trial court summarily denied Vilme's Rule 3.850 motion in a comprehensive well-reasoned written order. (DE# 11; App. K, L, M). Specifically, the trial court ruled that Vilme's claims of ineffective assistance of trial counsel were meritless pursuant to the standard established in Strickland v. Washington,

---

[3]The 1576-page trial transcript can be found at DE# 12.

466 U.S. 668 (1984). <u>Id</u>. Regarding the other seven claims, the trial court ruled that Vilme was not entitled to postconviction relief on those claims in that certain claims were procedurally barred in that they had been or should have been raised on direct appeal and/or were without merit. <u>Id</u>. Vilme took an appeal from the trial court's order, and the Florida appellate court issued a *per curiam* affirmance without written decision. (DE# 11; App. O). <u>See also</u> <u>Vilme v. State</u>, 973 So.2d 1141 (Fla. 3 DCA 2007)(table).

Soon after the postconviction appeal proceedings concluded, Vilme filed in the appellate court a <u>pro se</u> petition for writ of habeas corpus, alleging ineffective assistance of appellate counsel for the two reasons raised here. (DE# 11; App. R). After the state had filed its response (DE# 11; App. S), the petition was denied without explanation. <u>Vilme v. State</u>, 990 So. 2d 1081 (Fla. 3 DCA 2008). Two months later, Vilme came to this Court, filing the instant <u>pro se</u> petition for writ of habeas corpus pursuant to 28 U.S.C. §2254.

## IV. <u>Threshold Issues - Timeliness, Exhaustion Procedural Bar and Stay</u>

The respondent correctly does not challenge the timeliness of this petition. <u>See</u> 28 U.S.C. §2244(d). He has further conceded that certain claims of this federal petition have essentially been exhausted before the state courts. <u>See</u> 28 U.S.C. §2254(b)(1) and (b)(1)(A) (A state prisoner's habeas corpus petition "shall not be granted unless it appears that----the applicant has exhausted the remedies available in the courts of the State....").[4] The

---

[4]An applicant's federal writ of habeas corpus will not be granted unless the applicant exhausted his state court remedies. 28 U.S.C. §2254(b),(c). A claim must be presented to the highest court of the state to satisfy the exhaustion of state court remedies requirement. <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838 (1999); <u>Richardson v. Procunier</u>, 762 F.2d 429, 430 (5 Cir. 1985); <u>Carter v. Estelle</u>, 677 F.2d 427, 443 (5 Cir. 1982), <u>cert</u>. <u>denied</u>, 460 U.S. 1056 (1983). A petitioner is

respondent argues, however, that certain other claims raised by Petitioner, such as grounds one, three, five, eight, ten, eleven, twelve, and thirteen have not been exhausted in that Vilme failed to raise the claims in federal constitutional terms before the state trial and/or appellate courts during the direct appeal or postconviction proceedings. The respondent goes on to maintain that the unexhausted claims are prospectively procedurally barred from federal habeas corpus review. The respondent further argues that other claims, which have been exhausted, are procedurally barred in this federal proceeding, because the state courts applied an express procedural bar.

Apparently, in response to the respondent's procedural arguments, Vilme has now sought a stay of the instant habeas corpus proceeding so that he can return to the state courts to exhaust in federal constitutional terms any unexhausted claims. See Motion to Stay Habeas Petition. (DE# 13). The district courts have the discretion to stay a habeas action pending resolution of state postconviction proceedings. See Rhines v. Weber, 544 U.S. 269, 125 S.Ct. 1528 (2005)(holding that a federal district court has discretion to stay a mixed habeas petition containing exhausted and unexhausted claims to allow the petitioner to present his unexhausted claims to the state court in the first instance, and then to return to federal court for review of his perfected petition). However, a stay and abeyance is available to the petitioner in limited circumstances and only appropriate when the

---

required to present his claims to the state courts such that they are permitted the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." Picard v. Connor, 404 U.S. 270-275-77 (1971). Exhaustion is ordinarily accomplished on direct appeal. If not, in Florida, it may be accomplished by the filing of a Rule 3.850 motion, and an appeal from its denial. Leonard v. Wainwright, 601 F.2d 807, 808 (5 Cir. 1979). Claims of ineffective assistance of appellate counsel are raised in a state petition for writ of habeas corpus directed to the appellate court that considered the direct appeal. Smith v. State, 400 So.2d 956, 960 (Fla. 1981).

district court determines there was good cause for petitioner's failure to exhaust his claims first in the state courts. <u>Rhines v. Weber</u>, 544 U.S. at 277-78, 125 S.Ct. at 1535.

Even if some or part of the claims presented here are technically unexhausted, since the claims of this petition are either not cognizable in this federal habeas corpus proceeding and/or meritless, it will best serve the interest of judicial economy not to further belabor the exhaustion and related procedural bar issues and to exercise the discretion now afforded by Section 2254, as amended by the AEDPA, which permits a federal court to deny on the merits a habeas corpus application containing unexhausted claims. <u>See</u> 28 U.S.C. §2254(b)(2)("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Since Vilme is not entitled to federal habeas corpus relief on any unexhausted claims, the extraordinary action of holding this case in abeyance is not appropriate.

Similarly, as to certain other claims where the respondent has asserted procedural bars, since Vilme cannot prevail on the merits of his claims and/or the claims are not cognizable, and since the respondent in his response has addressed the claims on the merits in the alternative, there is no need to belabor the procedural bar issue. Although the procedural bar issue should ordinarily be resolved first, judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated. <u>See</u> <u>Lambrix v. Singletary</u>, 520 U.S. 518 (1997). <u>See also</u> <u>Barrett v. Acevedo</u>, 169 F.3d 1155, 1162 (8 Cir. 1999)(stating that judicial economy sometimes dictates reaching the merits if the merits are easily

resolvable against a petitioner and the procedural bar issues are complicated), <u>cert</u>. <u>denied</u>, 528 U.S. 846 (1999); <u>Chambers v. Bowersox</u>, 157 F.3d 560, 564 n. 4 (8 Cir. 1998)(stating that "[t]he simplest way to decide a case is often the best.") In this case, because the procedural default issues raise more questions than the case on the merits, it will be assumed without deciding that petitioner has not procedurally defaulted on any of his claims and the merits of the claims will be addressed where appropriate.

### V. <u>Standard of Review</u>

Petitioner filed his petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996). Post-AEDPA law, therefore, governs this action. <u>Abdul-Kabir v. Quarterman</u>, 550 U.S. 233, 127 S.Ct. 1654, 1664, 167 L.Ed.2d 585 (2007); <u>Penry v. Johnson</u>, 532 U.S. 782, 792, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001); <u>Davis v. Jones</u>, 506 F.3d 1325, 1331, n .9 (11 Cir. 2007). It is important to recognize just how limited is this Court's review in a habeas proceeding. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L .No. 104-132, 110 Stat. 1214 (1996), provides that a federal court may not grant the writ unless the state court adjudication on the merits either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

As the United States Supreme Court explained in <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000):

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

In deciding whether a state court ruling involved an "unreasonable application" of federal law, this Court does not focus merely upon whether the state court decision was erroneous or incorrect; rather, this Court may issue a writ of habeas corpus only if the state court's application of clearly-established federal law was objectively unreasonable. *See id*. at 409-11. See also Knowles v. Mirzayance, ___ U.S. ___, 129 S.Ct. 1411, 1418 (2009).

The statutory phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta, of [the U.S. Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. at 412, 120 S.Ct. at 1523 (majority opinion by O'Connor, J.). Findings of fact by the state court are presumed correct, and the petitioner bears the burden of rebutting that presumption of correctness by clear and convincing evidence. See 28 U.S.C. §2254(e)(1); Crowe v. Hall, 490 F.3d 840, 844 (11 Cir. 2007), *cert. denied*, ___ U.S. ___, 128 S.Ct. 2053 (2008).

## VI. Facts

The facts of this case as revealed by the evidence admitted at trial were aptly summarized by the state in its response to Vilme's

Rule 3.850 motion as follows:[5]

Edson Vilme ("Vilme") is one of three co-defendants who participated in the attempted robbery of a shipping business named Sea Linkton on May 26, 2000, that resulted in the murder of Mario Mentor. Vilme and co-defendant Michael Cajuste ("Cajuste"), were driven to the location by the [sic] Cajuste's girlfriend, co-defendant Claudia Salomon ("Salomon"). Vilme and Cajuste entered the business while Salomon waited in the getaway car with the engine running. Cajuste was armed with a firearm. Mario Mentor, his wife Josephine Augustine and her brother Bernard Augustine were inside the business. Cajuste and Vilme attempted to rob the victims at gunpoint. The [sic] Cajuste pointed his gun at Josephine Augustine. The victims resisted and a struggle ensued during between Mr. Augustine and Vilme during which Cajuste shot Bernard Augustine in the leg in order to assist Vilme. Cajuste pointed the gun at Mr. Augustine and attempted to fire additional shots at Mr. Augustine, but the gun jammed. Cajuste later shot and killed Mario Mentor as he and Vilme exited the business and escaped in the get away car driven by Salomon.

Thomas Smith Sr. And Thomas Smith, Jr. owned a nearby business. When they heard shots fired and realized that a robbery was in progress they responded to Sea Linkton to help. Salomon attempted to run over Thomas Smith Sr. as she escaped in the getaway car containing Cajuste and Vilme. Thomas Smith Sr. fired a shotgun, in self defense, that injured Salomon and caused the getaway car to crash. Cajuste and Vilme fled but were later captured and confessed to the attempted robbery.

Detectives traced the car used in the robbery to Cajuste's sister, Nancy Cajuste. Nancy Cajuste testified that her sister, Evelyn Cajuste, was Vilme's girlfriend. (T. 630-631). Vilme, Salomon and Cajuste had all left together in Nancy Cajuste's vehicle shortly before the robbery. A photographic lineup was shown to Mrs. Augustine. Since there was no Creole interpreter available, her cousin translated. Mrs. Augustine positively identified Cajuste as the assailant who entered Sea Linkton in broad day light and stuck a gun in her face. A photographic lineup was shown to Mr. Augustine. Mr. Augustine identified Vilme as one of the man [sic] who attacked him in the robbery. Detective Butchko eventually located Vilme and arrested him. He identified Vilme's photograph in the lineup that was shown to the Augustine and he identified Vilme in

---

[5]For a more detailed recitation of the facts of the case with references to the trial transcript, see the briefs filed on direct appeal. See DE# 11; App. E, F. See also Trial Transcript. (DE# 120. It is noted that the true names of the victims were: Mario Mentor, Odrof Augustin, and Josette Augustin.

court. Cajuste's subsequent sworn confession to his participation with Vilme and Salomon, in the attempted robbery and murder, and his possession of a firearm, were admitted into evidence during Cajuste's separate trial. [reference to exhibit omitted].

[Vilme] and co-defendant Salomon were tried in a joint trial with separate juries. Vilme was convicted by a jury of First Degree murder, attempted armed robbery with a firearm and attempted felony murder. He was sentence[d] to life without parole for first degree murder, life concurrent for attempted felony murder with a deadly weapon and thirty years concurrent for attempted armed robbery. Salomon was convicted of a lesser offense. She testified at trial that she drove Vilme and Cajuste to the scene of the robbery, but claimed that she was not aware that they were about to rob the business. Cajuste was convicted of all charges in a separate trial....

(State's Corrected Response to Post Conviction Petition at 1-2)(DE# 11; App. J).

VII. <u>Discussion</u>[6]

A. <u>Trial Court Error</u>

Vilme attacks his convictions on nine grounds of trial court error. Specifically, he alleges in **ground one** that the trial court improperly prohibited defense counsel from using a hypothetical question pertaining to the defense theory of independent act during *voir dire*, resulting in a fundamentally unfair trial.[7] This claim

---

[6]Where possible, relevant claims have been grouped together for discussion and, therefore, the claims will not always be discussed in the order presented in the petition.

[7]Specifically, the following question was posed by defense counsel Godwin to the prospective jurors:

| MR. GODWIN: | I have one more principle of law I'm going to read you and then I will be finished. I appreciate your patience. This is a principle called independent act. I'm going to use the A,B,C example again. Ms. Portillo, am I picking on you too much? |
|---|---|
| JUROR PORTILLO: | No. |
| MR. GODWIN: | A,B,C develop a plan to commit a robbery. A has the |

is meritless. Any limitation by the trial court on defense counsel's attempted use of the subject hypothetical did not render the trial fundamentally unfair or undermine confidence in the outcome of the trial.[8] The federal courts permit the use of hypothetical questions during *voir dire* as long as the hypothetical questions do not involve the facts of the case to be proved at trial and thus commit the jury to a decision in advance. See Hobbs v. Lockhart, 791 F.2d 125, 129-30 (8 Cir. 1986). Similarly, the Florida courts have held that where a juror's attitude about a particular legal doctrine is essential to a determination of whether challenges for cause or peremptory challenges are to be made, the scope of the *voir dire* properly includes questions about and references to that legal doctrine even if stated in the form of hypothetical questions. See Franqui v. State, 699 So.2d 1312, 1322-23 (Fla. 1997). See also Blevins v. State, 766 So.2d 401 (Fla. 2 DCA 2000). However, it is not proper to propound hypothetical questions purporting to embody testimony that is intended to be

---

> gun, B is going to grab the money, and C is the driver. That's the plan. Nobody is supposed to get hurt. Nobody is supposed to get shot. Nobody is supposed to do anything violent under this plan A,B,C had. The plan goes forward. A and B go to the Seven-Eleven. All of a sudden A starts shooting, not part of the plan.

(Trial Transcript at 374).

   [8]It is well settled that voir dire plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored. See Rosales-Lopez v. United States, 451 U.S. 182, 188-89 (1981). The purpose of a voir dire is to ascertain whether a potential juror can render a verdict solely on the basis of the evidence presented and the charge of the trial court. Wilcox v. Ford, 813 F.2d 1140, 1150 (11 Cir.), cert. denied, 484 U.S. 925 (1987). Without adequate jury selection proceedings, the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled. Rosales-Lopez, 451 U.S. at 188-89. Similarly, lack of adequate voir dire impairs the defendant's right to exercise peremptory challenges. Id. Because the obligation to impanel an impartial jury lies in the first instance with the trial judge, federal and state judges have been accorded ample discretion in determining how best to conduct voir dire. Id. See also Vining v. State, 637 So.2d 921, 926 (Fla.)(noting that the scope of voir dire questioning rests in the sound discretion of the court and will not be interfered with unless that discretion is clearly abused), cert. denied, 513 U.S. 1022 (1994).

submitted for the purpose of ascertaining from the juror how he or she will vote on such a state of the testimony. <u>Jackson v. State</u>, 881 So.2d 711, 714 (Fla. 3 DCA 2004); <u>Renney v. State</u>, 543 So.2d 420 (Fla. 5 DCA 1989).

Here, the prosecutor objected to the posed hypothetical question, arguing that it misstated the law on independent act,[9] and attempted to pre-try the case by asking jurors to commit to an outcome in a factual scenario nearly identical to the instant case. <u>See</u> Trial Transcript at 375-77. The trial court agreed with the state and sustained the objection. <u>Id</u>. The trial court properly prohibited counsel from posing the subject hypothetical question in that the question essentially included the facts of the instant case and implied, contrary to Florida law, that the independent act doctrine absolves a defendant of criminal liability when a co-defendant kills another during the course of an armed robbery or during flight from an armed robbery contrary to Florida law. <u>See</u> <u>Jones v. State</u>, 804 So. 2d 551, 552 (Fla. 3 DCA 2002)(holding in an armed robbery case that "[a] killing in the face of either verbal or physical resistance by a victim is properly viewed as being within the original criminal design" and the independent act doctrine is inapplicable); <u>Perez v. State</u>, 711 So. 2d 1215 (Fla. 3 DCA 1998)(holding that a killing that occurs during an escape from the planned offense is in furtherance of the original felony, therefore, independent act doctrine inapplicable). The trial court also properly found that the subject question was an attempt by the

---

[9]In Florida, an independent act occurs when a person other than the defendant commits or attempts to commit a crime, one, which the defendant did not intend to occur, and, two, in which the defendant did not participate, and, three, was outside of and not a reasonably foreseeable consequence of the common design or unlawful act contemplated by the defendant. <u>Calabrese v. State</u>, 886 So.2d 396, 398 (Fla. 1 DCA 2004). Where the defendant was a willing participant in the charged crime and the crime resulted from forces which he set in motion, no independent act instruction is appropriate pursuant to <u>Fla.Std.Jury Instr. (Crim.)</u> 3.04(h). <u>See</u> <u>Ray v. State</u>, 755 So.2d 604, 608-09 (Fla. 2000).

defense to pre-try the case, which is not permitted. See Williams v. State, 744 So. 2d 1103 (Fla. 3 DCA 1999). Moreover, Vilme was not denied a fundamentally fair trial, because he was ultimately permitted to apprise the potential jurors of the independent act theory and obtain their views on such a theory. See Trial Transcript at 378-84.

Vilme clams in **ground three** that the trial court in violation of his due process rights denied his request for special jury instructions regarding the independent act doctrine and withdrawal/abandonment theory. Vilme further claims that the trial court improperly refused to instruct the jury on the attempt instruction in its entirety so that it would include the paragraph regarding abandonment. See Trial Transcript at 1159-67, 1184-89, 1205-08, 1532-33. See also DE# 11; App. U. Vilme is not entitled to habeas corpus relief on this claim in that he has failed to demonstrate that the trial court rulings deprived him of a fundamentally fair trial.

"An error in instructing the jury cannot constitute a basis for habeas relief unless the error so infected the entire trial that the resulting conviction violates due process." Jacobs v. Singletary, 952 F.2d 1282, 1290 (11 Cir. 1992) (quotation omitted). "It is not sufficient that the instruction was undesirable, erroneous, or even universally condemned." Id. (quotation omitted). Consequently, alleged errors in a state court's jury instructions form no basis for federal habeas corpus relief unless they are so prejudicial as to render the trial fundamentally unfair. Jones v. Kemp, 794 F.2d 1536, 1540 (11 Cir.), cert. denied, 479 U.S. 965, 107 S.Ct. 466, 93 L.Ed.2d 411 (1986); Bryan v. Wainwright, 588 F.2d 1108 (5 Cir. 1979); Pleas v. Wainwright, 441 F.2d 56 (5 Cir. 1971). A jury charge is adequate if, viewed as a whole, it fairly

and correctly states the issues and law. United States v. Russell, 717 F.2d 518, 521 (11 Cir. 1983). In Florida, trial courts are generally required to adhere to the standard jury instructions after determining whether the standard jury instructions accurately and adequately state the relevant law. See Moody v. State, 359 So.2d 557 (Fla. 4 DCA 1978). When the standard instructions do accurately and adequately state the relevant law, trial courts in Florida are required to give the standard instructions in the absence of extraordinary circumstances. Id.

Where the error alleged is an incomplete or omitted instruction, a habeas corpus petitioner bears an especially heavy burden, because an incomplete or omitted instruction is less likely to be prejudicial than an overt misstatement of the law. Henderson v. Kibbe, 431 U.S. 145, 154 (1977); Jacobs v. Singletary, 952 F.2d 1282, 1290 (11 Cir. 1992). Regarding a theory of defense jury instruction, such instruction must be given when the requested instruction 1) is correct, 2) is not substantially covered by the court's charge to the jury, and 3) deals with some point in the trial so important that failure to give the requested instruction would seriously impair the defendant's ability to conduct his defense. United States v. Vicaria, 12 F.3d 195, 198 (11 Cir. 1994), citing, United States v. Camejo, 929 F.2d 610, 614 (11 Cir. 1991). A court's failure to give an appropriate theory-of-defense jury instruction, without more, is however not a violation of the due process clause. Some other circumstances, demonstrating a serious miscarriage of justice, must also be present. Frey v. Leapley, 931 F.2d 1253 (8 Cir. 1991). To obtain habeas corpus relief, the error must amount to "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424 (1962).

The instructions given in this case were appropriate to the case and accurately and adequately stated the relevant law. The trial court properly denied the requested special instructions, because there was no evidence to support them. See Trial Transcript at 1158-61, 1184-89. As to the defense of abandonment, Florida recognizes the common-law defense of abandonment, also referred to as withdrawal or renunciation. See Carroll v. State, 680 So.2d 1065, 1066-67 (Fla. 3 DCA 1996). The law distinguishes between a "voluntary abandonment" and an "involuntary abandonment." Id. In order to constitute a defense, the abandonment must be complete and voluntary and, what is usually referred to as involuntary abandonment is no defense. Id. See also Webber v. State, 718 So.2d 258 (Fla.5 DCA 1998)(holding that defendant's withdrawal from sale of stolen property because he suspected that he had been set up and that police might be involved, was an involuntary abandonment, and thus provided no defense in prosecution for dealing in stolen property). It is not an attempt to commit a crime if the defendant abandoned his attempt to commit the offense or otherwise prevented its commission, under circumstances indicating a complete and voluntary renunciation of his criminal purpose. See Standard Jury Instructions, Attempt to Commit Crime Fla. Stat. 777.04(1). Particular as to the offense of felony murder, once a person has become an active participant in the crime giving rise to the charge of felony murder, and actually advanced to committing the underlying crime, the defense of withdrawal is only available if the defendant shows a "complete renunciation of the impending murders and communication of his renunciation to his co-felons in sufficient time to allow them to consider refraining from the homicide." See Smith v. State, 424 So. 2d 726, 732 (Fla. 1982). See also Kane v. State, 698 So. 2d 1254, 1256 (Fla. 2 DCA 1997).

In this case, the evidence at trial did not support any defense of abandonment or withdrawal. The circumstance which thwarted Vilme's will to complete the transaction was the victims' resistance to the robbery, resulting in the perpetrators leaving the scene without having completed the robbery. The evidence admitted at trial indicates that Cajuste stormed into the Sea Linton office, demanded money, and physically struggled with the victims when they refused to cooperate. Cajuste and Vilme fled the office when Cajuste's gun misfired and the victims attempted to apprehend them. During their exit, the perpetrators continued to shoot the victims as they fled, resulting in the death of one of the victims. The murder and two attempted murders all occurred during the course of the armed robbery attempt and the escape from that offense. The fact that Vilme and codefendant Cajuste did not successfully accomplish their goal of robbery, does not entitled Vilme to the requested instruction. The instruction was, therefore, properly denied, although essentially argued by trial counsel to the jury.[10]

Regarding an independent act instruction, as indicated *infra* at n.9, an independent act occurs when a person other than the defendant commits or attempts to commit a crime, one, which the defendant did not intend to occur, and, two, in which the defendant

---

[10] As indicated by the juror's note to the court during deliberations, the jury was apparently unsure whether the defense was proceeding on an abandonment theory and, if so, the jury requested instructions on that theory. See Trial Transcript at 1556. In response to the question, the court instructed the jury in writing: "The jury instructions contain all the laws that apply in this case." Id. at 1559. Thus, although, the jury was not permitted to consider an abandonment theory, it certainly was free to find him not guilty based upon the other clear and appropriate jury instructions given. The jury chose not to do so as to Counts I, II, and IV, apparently finding that Vilme intended to and actively participated in the attempted armed robbery and crimes which flowed from the robbery and immediate exit from the business. The jury did find Vilme not guilty as to Count III, however, indicating that they did in fact conduct serious and thoughtful deliberations and, after which, found that Vilme was not criminally responsible for the later crime committed when codefendant Salomon was driving the car during the escape from the scene of the crimes.

did not participate, and, three, was outside of and not a reasonably foreseeable consequence of the common design or unlawful act contemplated by the defendant. Calabrese v. State, 886 So.2d 396, 398 (Fla. 1 DCA 2004). See also Ray v. State, 755 So.2d 604, 608-09 (Fla. 2000). More specifically, "[a] killing in the face of either verbal or physical resistance by a victim is properly viewed as being within the original criminal design." Jones v. State, 804 So. 2d 551, 552 (Fla. 3 DCA 2002). In the instant case, the independent act doctrine is inapplicable because the murder and attempted murder did not exceed the scope of the original plan to rob Sea Linton. Based upon the facts as summarized above, it is apparent that the shootings of Augustin and Mentor and the attempt to strike Smith with the getaway car all occurred during in furtherance of the attempted robbery and escape. The trial court did not abuse its discretion by denying the independent act instruction when it is completely unsupported by the evidence. See Jones, 804 So. 2d at 552 (defendant who helped plan armed robbery was criminally liable for shooting of store owner who offered verbal resistance even if defendant was not physically present because the shooting was in furtherance of the criminal design); Lovette v. State, 636 So. 2d 1304 (Fla. 1994)(defendant was not entitled to independent act instruction where he was a willing participant in the armed robbery of the store, and co-defendant's killings of victims were in furtherance of the robbery because they lessened the immediate detection of the robbery and apprehension); Perez v. State, 711 So. 2d 1215 (Fla. 3 DCA 1998)(defendant was not entitled to an 'independent act' instruction as to the killing of a bystander during escape from a store robbery where defendant and co-defendants agreed to rob the store, defendant was a willing participant in the armed robbery).

Further, the trial court fully and correctly instructed the

18

jury on the offense of first degree murder and first degree felony
murder and the instructions correctly set forth the elements of the
offenses which were required to be proved beyond a reasonable doubt
before finding Vilme guilty of the offense of felony murder. <u>See</u>
Trial Transcript at 1526-30. No special instruction was,
therefore, required. <u>Ray</u>, 755 So. 2d at 610 (holding that an
instruction virtually identical to the one given in the instant
case sufficiently set forth defendant's liability for the acts of
his cofelon, therefore, further instruction on independent act was
not warranted and the court's refusal to give such instruction was
not error).

It is noted that although the trial court properly denied
Vilme's request for the special instructions, and although defense
counsel may have been technically prevented from presenting such
defenses of independent act and abandonment, it is clear from the
record that throughout the trial, trial counsel forcefully
attempting to persuade the jury that Vilme had no intent whatever
to commit any offense other than robbery and that it was Cajuste
who acted on his own with regard to those crimes. Defense counsel
essentially presented the independent act defense, as well as other
defenses. While the pertinent information was revealed to the jury,
it apparently did not favorably influence the jury with regard to
guilt except as to Count III.

Vilme claims in **ground five** that the trial court improperly
refused to specifically re-instruct the jury on the "single
defendant, multiple counts" instruction."[11] During deliberations,

---

[11]The jury was instructed pursuant to <u>Fla.Std. Jury Instructions</u> (Crim)
3.12(a)(single defendant, multiple counts or informations) as follows:

   A separate crime is charged in each count of the indictment and while they
   have been tried together, each crime and the evidence applicable to it must
   be considered separately and a separate verdict returned as to each. A

the jury sent a note to the court, requesting clarification of the subject jury instruction, stating as follows: "Can a defendant be considered a principal in one charge, but not considered a principal in subsequent charges? Are you able to clarify this to us?" <u>See</u> Trial Transcript at 1566. <u>See also</u> DE# 11; App. W. Although trial counsel initially requested that only the specific instruction be re-read, after further discussion with trial counsel and the state, it was agreed that the court would first ask the jury whether they wanted to have all of the instructions re-read to them and, if so, the instructions would be re-read in their entirety. <u>See</u> Trial Transcript at 1566-69. Upon inquiry from the court, the jury answered in the negative. <u>Id</u>. at 1571. The court then advised the jury, over defense objection, that "the jury instructions contain all the laws that apply to this case." <u>Id</u>. The jury returned to deliberate. <u>Id</u>.

In Florida, a trial court does not abuse its discretion by referring the jury to the instructions that had already been provided when they fully and clearly answer the jury's question. <u>See</u> <u>Perriman v. State</u>, 731 So. 2d 1243 (Fla. 1999)(holding that the trial court did not abuse its discretion by referring the jury to the standard instructions because the standard instructions clearly and legally answered the question); <u>Gonzalez v. State</u>, 502 So.2d 66, 67 (Fla. 3d DCA 1987)(holding that where a trial court directly responds to a jury's specific request and limits its re-instruction accordingly, there is no error); <u>Henry v. State</u>, 359 So.2d 864, 868 (Fla. 1978)(holding that a trial judge does not abuse his discretion in limiting reinstruction to an unambiguous response to the jury's request).

---

finding of guilty or not guilty as to one count must not affect your verdict as to the other crimes charged.

(Trial Transcript at 1548).

Here, the trial court here correctly instructed the jury pursuant to state law and sufficiently addressed the matters of law at issue. This federal court should therefore defer to the state court in its interpretation of its law, and accept same since the interpretation does not violate the Constitution. See Machin v. Wainwright, 758 F.2d 1431, 1433 (11 Cir. 1985); Carrizales v. Wainwright, 699 F.2d 1053 (11 Cir. 1983). Accordingly, petitioner's trial was not rendered fundamentally unfair because of the jury instruction. See Futch v. Dugger, 874 F.2d 1483, 1488 (11th Cir. Fla. 1989)( "The failure, then, to reinstruct the jury on excusable homicide did not so infect the entire trial that petitioner's conviction violated due process.") Moreover, in this case, it is apparent that after the above-described exchange, the jury was able to properly deliberate and the jury understood that the counts were to be considered separately. The jury found Vilme guilty of Counts I, II, and IV, but not guilty of count III, the attempted felony murder of Thomas Smith, Sr. See Trial Transcript at 1572-73. Even if the trial court erred by declining to re-instruct the jury regarding the multiple defendants and multiple counts, any error was harmless beyond any doubt. See Brecht v. Abrahamson, 507 U.S. 619, 623 (1993), quoting, Kotteakos v. United States, 328 U.S. 750, 776 (1946)(a petitioner is entitled to federal habeas corpus relief only if the constitutional error from his trial had substantial and injurious effect or influence in determining the jury's verdict).

Vilme claims in **ground eight** that the trial court violated his due process rights when it denied his request for an independent act instruction. This claim was raised and addressed above in connection with ground three. For the reasons already stated, it is meritless.

21

Vilme alleges in **claim ten** that the trial court violated his rights to due process when it denied his motion for severance and did not try him separately from co-defendant Claudia Salomon who claimed that she had merely provided the transportation for Cajuste and Vilme and that she had no idea whatever that Cajuste was armed and that Cajuste and Vilme planned to commit a robbery. See Trial Transcript at 455-56. The trial court in the postconviction proceeding found the claim procedurally barred and then denied the claim as meritless, *citing*, <u>McCray v. State</u>, 416 So. 2d 804 (Fla. 1982). (Order Denying Post Conviction Petition at 4). The denial was affirmed on appeal. <u>Vilme v. State</u>, 973 So.2d 1141 (Fla. 3 DCA 2007)(table).

The Supreme Court has recognized no general right to a separate criminal trial. In <u>Zafiro v. United States</u>, 506 U.S. 534 (1993). Further, it is well settled that persons charged together should ordinarily be tried jointly. <u>United States v. Morales</u>, 868 F.2d 1562, 1571 (11 Cir. 1989). Denial of severance provides a basis for habeas corpus relief only if the denial resulted in a trial that was fundamentally unfair. See <u>Smith v. Kelso</u>, 863 F.2d 1564, 1567-68 (11 Cir. 1989)(noting that habeas relief is available for a state trial court's denial of a severance motion "only if" there was "prejudice from a joint trial amounting to fundamental unfairness"). Only if the jury cannot separate the evidence relevant to each defendant and not render a fair and impartial verdict as to each should severance be granted. See <u>United States v. Butler</u>, 792 F.2d 1528, 1534 (11 Cir. 1986). Similarly, in Florida, the fact that the defendant might have a better chance of acquittal or a strategic advantage if tried separately does not establish the right to a severance. <u>McCray v. State</u>, 416 So. 2d 804, 806-07 (Fla. 1982)(affirming a denial of severance, because: (1) the defendant had a full opportunity to confront and

cross-examine each of the witnesses against him; (2) none of the codefendants inculpated each other by confessing; and (3) the evidence was not too complex for the jury to apply it to each individual defendant). See also Fla.R.Crim.P. 3.152(b).

It is apparent from review of the trial transcript that the motion to sever was properly denied by the trial court. Here, the evidence was not so complicated and/or confusing that the jury could not appraise the independent evidence admitted against Salomon without separating it from the question of Vilme's guilt of the crimes charged. Because the jury could readily distinguish what the evidence showed Petitioner did and what the evidence showed Salomon did and said, it clearly could apply the law intelligently to determine Petitioner's guilt or innocence. Severance was, therefore, not needed. Severance becomes necessary where the proof is such that a jury could not be expected to compartmentalize the evidence as it relates to separate defendants, which was not the case here. See United States v. Butler, 792 F.2d 1528, 1534 (11 Cir. 1986); United States v. De Larosa, 450 F.2d 1057, 1065 (3 Cir 1971), cert. denied, 405 U.S. 927 (1972). See also Biscardi v. State, 511 So. 2d 575, 578 (Fla. 4 DCA 1987). Further, the case was tried before two separate juries so that when certain witnesses that solely pertained to Salomon were called to testify, Vilme's jury was excused and did not hear such testimony. See e.g., Trial Transcript at 1122-25. Finally, since Salomon did in fact testify as a witness at trial, and was available for cross-examination by Vilme, and was questioned by Vilme, *Bruton* was inapplicable.[12] See Trial Transcript at 1056. Moreover, Salmon's testimony was beneficial for the defense and, most likely, contributed to the

_____

[12] See Bruton v. United States, 391 U.S. 123 (1968)(holding that the admission of a nontestifying codefendant's confession in a joint trial violates a petitioner's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment).

jury's finding of not guilty as to Count III. <u>Id</u>.

Vilme claims in **ground eleven** that the trial court judge invaded the attorney-client privilege when he inquired into discussions Vilme had with his attorney regarding whether Vilme had agreed with the defense strategy of conceding that Vilme had committed the armed robbery. <u>See</u> Trial Transcript at 502-24. Review of the record reveals that at the start of opening statement, trial counsel conceded that Vilme was present at the scene with his codefendants for the purpose of committing a robbery. <u>See</u> Trial Transcript at 492-93. However, the defense further argued that Vilme did not participate in any way in the other charged crimes of first degree murder and attempted felony murder with a deadly weapon. The defense maintained that those crimes were outside the scope of the robbery plan and were committed solely by codefendant Cajuste, and that Vilme abandoned the criminal scheme the moment Cajuste began shooting. <u>Id</u>. In order to ensure that Vilme was in agreement with the strategy employed by counsel, the trial court attempted to obtain information from Vilme. <u>Id</u>. at 503-04. However, trial counsel objected to the line of questioning as invading the attorney-client privilege and Vilme never answered the court's question. <u>Id</u>. Consequently, Vilme's claim is frivolous as refuted by the record, as properly found by the trial court in the Rule 3.850 proceeding. <u>See</u> Order Denying Post Conviction Petition at 4 (finding that "the trial court's inquiry[] is irrelevant and non prejudicial." (citation to record omitted)). Moreover, trial counsel did not render ineffective assistance in this regard for the reasons stated below in the discussion of ground two.

Vilme argues in **ground twelve** that the trial court denied his right to due process when it altered the order of the trial proceedings, resulting in undue pressure regarding his decision

whether to testify in his own behalf or remain silent. Review of the trial transcript indicates that Vilme was informed that if he were to testify as a defense witness, he could do so after all defense witnesses had been called and his co-defendant's trial had closed. See Trial Transcript at 911-26. However, later in the trial, pursuant to argument by the state, the trial court ruled that if Vilme were going to testify, it would have to be at an earlier time. Id. at 975-86. When Vilme responded that he could not then decide, the trial court interpreted Vilme's response as an indication that he did not want to testify. Id. at 983-85. Based upon the court's ruling, trial counsel stated that the defense would rest, although he was not doing so "freely and voluntarily." Id. at 985.

The courts have consistently recognized the important role the trial judge plays in the system of criminal justice. The trial judge has broad power to control the progress and, within the limits of the adversary system, the shape of the trial. "[T]he judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law." Quercia v. United States, 289 U.S. 466, 469-69 (1933). The trial judge must meet situations as they arise and to do this must have broad power to cope with the complexities and contingencies inherent in the adversary process. See Geders v. United States, 425 U.S. 80, 86-87 (1976) and cases cited therein. To this end, the trial court judge may determine generally the order in which parties will adduce proof, and his determination will be reviewed only for abuse of discretion. Id.

In this jointly conducted trial, it was for the trial court to determine which defendant would present evidence first. There was nothing improper in the court's initial ruling. Even if in some way

improper, the trial court later granted Vilme's motion to reopen the case and gave the defense another opportunity to call Vilme as a defense witness at the conclusion of co-defendant Salomon's trial. <u>See</u> Trial Transcript at 1012-22, 1153. Even after having had the opportunity to wait until all evidence had been presented, Vilme elected not to testify as a witness and the defense, instead, rested. <u>Id</u>. at 1153. Thus, Vilme was ultimately permitted to testify as a defense witness after his codefendant's case had concluded and after he had had the opportunity to hear all evidence presented. It was his choice not to do so. Therefore, it was Vilme's own actions that resulted in his not having been called as a defense witness, and not any improper action of the trial court. Vilme's constitutional right to testify in his own defense was in no way violated by the trial court's actions. Accordingly, Vilme was not deprived of a fundamentally fair trial, as alleged in ground twelve.

Vilme next argues in **claim thirteen** that the trial court violated his due process and confrontation rights when it (1) failed to grant suppression of the identification made by Detective Butchko and his statements that resulted from his arrest, because his arrest was made without probable cause; (2) admitted a photograph against him at trial that was not authenticated; and (3) when it granted the state's motion *in limine* and excluded his out-of-court statements indicating that he did not participate in the crimes of first degree murder and attempted felony murder. Vilme is not entitled to habeas corpus relief on this claim.

First, any Fourth Amendment challenges to the admission of the subject statements and identification are not cognizable in this federal habeas corpus proceeding. It is well settled that federal habeas corpus relief is not available to a state prisoner on the

ground that a conviction was based on evidence obtained in violation of the Fourth Amendment, if the state provided an opportunity for full and fair litigation of the Fourth Amendment claim. Cardwell v. Taylor, 461 U.S. 571 (1983); Stone v. Powell, 428 U.S. 465 (1976); Devier v. Zant, 3 F.3d 1445, 1455 (11 Cir. 1993); Harris v. Dugger, 874 F.2d 756, 761 (11 Cir.), cert. denied, 493 U.S. 1011 (1989); Ponce v. Cupp, 735 F.2d 333, 335 (9 Cir. 1984); Swicegood v. Alabama, 577 F.2d 1322, 1324-25 (5 Cir. 1978). The doctrine established in Stone v. Powell, supra has survived the passage of the AEDPA. See Bradley v. Nagle, 212 F.3d 559, 564-66 (11 Cir. 2000)("The Supreme Court ... has held that federal courts are precluded from conducting post-conviction review of Fourth Amendment claims where state courts have provided 'an opportunity for full and fair litigation' of those claims."), cert. denied, 531 U.S. 1128 (2001). The *Stone* doctrine is equally applicable to statements allegedly obtained as fruits of an unlawful arrest. Devier v. Zant, 3 F.3d 1445, 1455 (11 Cir. 1994)(holding that based upon Stone v. Powell federal courts lack authority to review petitioner's claim that his Fourth Amendment rights were violated when he was arrested under authority of a warrant not supported by probable cause and that certain of his statements admitted at trial were the fruits of this allegedly improper arrest when the claims were raised before the state courts by way of a motion to suppress and an appeal from the denial), cert. denied, 513 U.S. 1161 (1995).

Before trial, Vilme filed a motion to suppress his post-arrest statement to the police. See Initial Brief of Appellant at 1, *citing* to Record on Direct Appeal.[13] The motion was denied. Id. Thus, any and all Fourth Amendment claims were fully litigated in

---

[13]It does not appear as if the pretrial suppression proceeding was transcribed and, if it were, this Court does not have a copy of the transcript of the hearing on the motion to suppress.

the state courts and/or Vilme had the opportunity to fully litigate his claims. Vilme is not now entitled to relief. See Bradley v. Nagle, 212 F.3d at 565 (stating that "[w]e cannot now say that [petitioner] was denied a full and fair opportunity to litigate his Fourth Amendment claims, even were we to disagree with the state courts' analysis or conclusion. To do so would vitiate the Supreme Court's decision in Stone, which we are not empowered to do.").

Moreover, the trial court in pretrial and postconviction proceedings found that Detective Butchko had probable cause to arrest Vilme even if it was based, in part, upon his co-defendants' declarations against their own penal interests, which also inculpated Vilme. See United States v. Harris, 403 U.S. 573, 583 (1971)(stating that, "People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility-sufficient at least to support a finding of probable cause to search.") Co-defendant Salomon identified Vilme as the second man who helped to commit the attempted robbery. See Trial Transcript at 1026-44. After his arrest, Cajuste gave a sworn statement to the police made after he waived his constitutional rights pursuant to Miranda.[14] Id. at 987-990. See also Sworn Statement of Michael Cajuste. (DE# 11; App. Y). Additionally, any claim by Vilme that his statement was obtained in violation of his protections pursuant to Miranda, entitling him to relief, is frivolous in that Vilme's statement to the police was never admitted at trial.

As to Vilme's photograph, Detective John Butchko, of the

---

[14]Miranda v. Arizona, 384 U.S. 436 (1966).

Miami-Dade Police Department Homicide Division, identified Vilme at
trial and identified a photograph of Vilme over defense objection.
See Trial Transcript at 783-86. Vilme claims that it was only
through the lengthy and unlawful interrogation of him that the
detective was able to make such an identification and, therefore,
the photograph and identification of him by Detective Butchko
should have been suppressed. This argument is also without merit.
As indicated, the arrest was lawful and the identification was not
made by way of an unlawful arrest. See United States v. Crews, 445
U.S. 463 (1980)(holding that if identification is not the result of
the exploitation of the violation of the defendant's Fourth
Amendment rights, and the witness's presence in the courtroom was
not the product of any police misconduct, the identification is
admissible). Further, Detective Butchko identified Vilme based upon
his knowledge of the case, his arrest of Vilme, and the police
records that included Vilme's photograph. Moreover, even if
Detective Butchko's identification testimony was in any way
improper, the admission of such evidence did not render the trial
fundamentally unfair. Co-defendant Salomon testified at trial and
she identified Vilme as one of the two men who robbed Sea Linkton.
See Trial Transcript at 1067. Co-defendant Cajuste's sister, Nancy
Cajuste, testified at trial that Vilme was in the getaway car with
Salomon and her brother shortly before the attempted robbery. Id.
at 630-36. Vilme had been dating Cajuste's other sister Evelyn at
the time of the attempted robbery. Id. at 631. Cajuste gave the
police a sworn statement about the incident and he identified Vilme
as a coperpetrator. See Sworn Statement of Cajuste. (DE# 11; App.
Y). Vilme's identity and photograph would have been inevitably
discovered. And, as indicated above, during a photographic lineup,
Vilme was identified as one of the perpetrators by victim Bernard
Augustine.

As to the third sub-claim, regarding the trial court's limitation of Vilme's cross-examination regarding his post-arrest statements, the record reveals that Detective Butchko was called as a state witness for the purpose of identifying Vilme and that was the substance of his direct testimony. Id. at 782-84. Vilme wanted to cross-examine Detective Butchko in such a manner so as to elicit Vilme's entire statement given to Detective Butchko so that his statements denying involvement in the murder and attempted murder could be admitted in the hopes of obtaining an acquittal on those charges. However, the state objected to such line of questioning and moved to prevent the defense from questioning Detective Butchko as to Vilme's self-serving statements. The trial court granted the state's request, and trial counsel was solely permitted to cross-examine Detective Butchko concerning the basis of his identification including the fact that Detective Butchko had spoken with Vilme. Id. at 802, 905, 908, 931.

The trial court's limitation on Vilme's cross-examination was proper in that the questions exceeded the scope of direct examination. The trial court's ruling did not violate Vilme's confrontation rights.[15] Detective Butchko did not testify as to the

---

[15]In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." U.S. Const. amend. VI. The right is secured for defendants in state as well as federal criminal proceedings by the Fourteenth Amendment. Pointer v. Texas, 380 U.S. 400, 403, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965). The Confrontation Clause necessarily includes the right to cross-examination a witness. Smith v. Illinois, 390 U.S. 129, 131, 88 S.Ct. 748, 749, 19 L.Ed.2d 956 (1968). Nevertheless, the right to cross-examination is not without limits, as "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985). The scope of cross-examination regarding a particular line of inquiry is "within the sound discretion of the trial court," and "it may exercise a reasonable judgment in determining when [a] subject is [inappropriate]." Alford v. United States, 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L.Ed. 624 (1931)). "[T]rial judges retain wide latitude ... to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that

statements obtained from Vilme during questioning and Vilme's sworn
statement was not admitted into evidence. The trial court did not
abuse its discretion in disallowing into evidence exculpatory
statements Vilme made in his sworn statement to Detective Butchko.
Self-serving statements are not exempted from the hearsay rule or
any other exemption or exception, and are thus inadmissible
hearsay. <u>See</u> <u>United States v. Quansah</u>, 171 Fed.Appx. 51, 52 (9
Cir. 2006). <u>See also</u> <u>Cotton v. State</u>, 763 So.2d 437, 442 (Fla. 4
DCA 2000)(holding that defendant's post-arrest statement to the
police was inadmissible hearsay in that it was a self-serving
exculpatory statement which lacked reliability and
trustworthiness), *citing*, <u>Fagan v. State</u>, 425 So. 2d 214 (Fla. 4
DCA 1983)(holding that testimony of arresting officer as to
exculpatory statement made by defendant at time of his arrest was
properly excluded as hearsay where defendant chose not to testify
at trial and statement did not fit into categories of res gestae,
statement against penal interest or admissions of party opponent).
Trial counsel was properly restricted from eliciting the substance
of Vilme's inadmissible and self-serving statements. Moreover,
trial counsel was otherwise permitted full cross-examination of the
detective and was able to challenge his credibility and the
reliability of his testimony, the true purpose of cross-
examination. <u>See</u> <u>Davis v. Alaska</u>, 415 U.S. 308, 316, 94 S.Ct. 1105,
1110 (1974)(stating that, "[c]ross-examination is the principal
means by which the believability of a witness and the truth of his
testimony are tested.... [T]he cross-examiner is not only permitted
to delve into the witness' story to test the witness' perceptions
and memory, but the cross-examiner has traditionally been allowed
to impeach, i.e., discredit, the witness.").

---

is repetitive or only marginally relevant." <u>Delaware v. Van Arsdall</u>, 475 U.S.
673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986).

If, Vilme is also alleging that the trial court's ruling violates state law, such as Florida's rule of completeness as is codified in Fla.Stat. §90.108 ("When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him or her at that time to introduce any other part or any other writing or recorded statement that in fairness ought to be considered contemporaneously."); accord, Fed.R.Evid. 106, or other state principle of law, such a claim is not cognizable in this federal habeas corpus proceeding. It is well settled that federal habeas review is not available to correct state law evidentiary errors; it is limited to violations of constitutional rights. Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991). A claim that an evidentiary ruling was allegedly incorrect under state law is not a basis for habeas relief. Id. at 72. The rule of completeness is an evidentiary rule, not a rule of constitutional law. See Howard v. Moore, 131 F.3d 399, 415 (4 Cir. 1997). Moreover, neither the federal or Florida rules of completeness compel admission of otherwise inadmissible hearsay evidence. United States v. Quansah, supra; Evans v. State, 808 So.2d 92, 104 (Fla. 2001)(concluding that the rule of completeness did not entitle the defendant to elicit a detective's hearsay testimony on cross-examination when the jury was not misled or confused by the detective's direct examination testimony and the detective did not testify about a specific witness's partial statement that required further clarification).

Vilme claims in **ground fourteen** that the trial court denied his right to due process when it denied his motion for a new trial. Specifically, he alleges that (1) the weight of the evidence was contrary to the verdict; (2) he was entitled to a judgment of acquittal in that the state had failed to sufficiently prove the

elements of "principal"; (3) the trial court erroneously instructed the jury on matters of law objected to by the defense; and (4) the trial court refused to give requested jury instructions. Only the sufficiency of the evidence challenge need be addressed in that all other claims have been discussed and found meritless.

Taken in the light most favorable to the state, the competent evidence admitted at trial and reasonable inferences therefrom upon which the jury's verdict was based was more than ample to have permitted a rational trier of fact to find that Vilme committed the subject offense for which he was convicted. See Jackson v. Virginia, 443 U.S. 307 (1979)("....the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.").[16] As summarized above,

---

[16]The standard for review of the sufficiency of the evidence on a petition for federal habeas corpus relief is whether the evidence presented, viewed in a light most favorable to the state, would have permitted a rational trier of fact to find the petitioner guilty of the crimes charged beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979); Smith v. White, 815 F.2d 1401 (11 Cir. 1987). The courts have consistently reiterated that the standard of weighing the constitutional sufficiency of evidence is a limited one, Wilcox v. Ford, 813 F.2d 1140, 1143 (11 Cir. 1987), and when faced with a record of historical facts that supports conflicting inferences, the court in a federal habeas corpus proceeding must presume that the jury resolved such conflicts in favor of the prosecution, deferring to the jury's judgment as to the weight and credibility of the evidence. Id. at 1143, citing Jackson v. Virginia, 443 U.S. at 326; Machin v. Wainwright, 758 F.2d 1431, 1435 (11 Cir. 1985). The simple fact that the evidence gives some support to the defendant's theory of innocence does not warrant the grant of habeas relief. Wilcox v. Ford, 813 F.2d at 1143, citing Martin v. State of Alabama, 730 F.2d 721, 724 (11 Cir. 1984). The Jackson standard for the sufficiency of the evidence is equally applicable to direct or circumstantial evidence. Jackson v. Virginia, 443 U.S. at 320; United States v. Peddle, 821 F.2d 1521, 1525 (11 Cir. 1987). Similarly, in Florida, the test for sufficiency of the evidence is whether a "rational trier of fact could have found proof of guilt beyond a reasonable doubt." Melendez v. State, 498 So.2d 1258, 1261 (Fla. 1986) (citing Jackson v. Virginia, 443 U.S. 307 (1979)). A defendant who challenges the sufficiency of the evidence admits not only the facts stated and the evidence adduced, but also every reasonable inference to be drawn from the evidence that is favorable to the state. Gant v. State, 640 So.2d 1180, 1181 (Fla. 4 DCA 1994). It is for the jury to decide what inferences are to be drawn from the facts. Taylor v. State, 583 So.2d 323, 328 (Fla. 1991). In Florida, this standard of review is equally applicable to direct or circumstantial evidence, so that proof based entirely on circumstantial evidence can be sufficient to sustain a

the evidence admitted at trial included a positive identification from Mrs. Augustine that Cajuste entered Sea Linkton in broad day light and stuck a gun in her face. A photographic lineup was shown to Mr. Augustine. Mr. Augustine identified Vilme as one of the men who attacked him in the robbery. Co-defendant Salmon testified at trial that she drove Vilme and Cajuste to the scene of the robbery. The evidence further showed that a struggle ensued between Cajuste and Mr. Augustine, resulting in him being shot in the leg. Cajuste pointed the gun at Mr. Augustine and attempted to fire additional shots at Mr. Augustine, but the gun jammed. Cajuste later shot and killed Mario Mentor as he and Vilme exited the business and escaped in the get away car driven by Salomon. The evidence was clearly sufficient to sustain the convictions. See Jackson v. Virginia, 443 U.S. 307 (1979). Vilme was charged as a principal, the jury was properly instructed as to all substantive offenses, see Fla.Stat. §§784.04(1)(a), 782.051(1), 775.087, 812.13(2)(a)(b), 777.04, and the jury was given the instruction regarding principals pursuant to Fla.Stat. §777.011[17] and Fla.Std.Jury Instr. (Crim.) 3.01. See Trial Transcript at 1526-43. Vilme was not entitled to a judgment of acquittal and the motion for new trial was properly denied.

---

conviction provided that other conditions established by Florida caselaw are satisfied. See Orme v. State, 677 So.2d 258, 258-62 (Fla. 1996) and cases cited therein. See also James v. State, 741 So.2d 546, 548-49 (Fla. 4 DCA 1999)(good discussion on standard upon which the trial court may grant a judgment of acquittal in a circumstantial evidence case).

[17]Florida law is clear that a person may be convicted of a criminal offense if he aided and abetted its principals. See Fla. Stat. §777.011 (aider or abettor may be convicted as principal even if not actually or constructively present at commission of offense); Voto v. State, 509 So.2d 1291, 1292-93 (Fla. 4 DCA 1987); Ramirez v. State, 371 So.2d 1063, 1065 (Fla. 3 DCA), cert. denied, 383 So.2d 1201 (Fla.1980). Thus, a person who participates in a crime is responsible for the acts of his accomplices, as long as the crime committed by the accomplice is within the participants' common design. Parker v. State, 458 So.2d 750 (Fla. 1984), cert. denied, 470 U.S. 1088 (1985). See also  Jacobs v State, 396 So.2d 713, 717 (Fla. 1981)("One who participates with another in a common criminal scheme is guilty of all crimes committed in furtherance of that scheme regardless of whether he or she physically participates in that crime.")

The state courts' rejections on direct appeal and postconviction proceedings of claims one, three, five, eight, ten, eleven, twelve, thirteen, and fourteen were factually reasonable and in accordance with applicable federal principles, and the results should not be disturbed. 28 U.S.C.§2254(d)(1); <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000).

### B. <u>Prosecutorial Misconduct</u>

Vilme claims in **ground four** that he was denied a fair trial by the following comments made by the prosecutor during closing argument:

> ...This man is a principal in an attempted armed robbery in which the victim was killed in the robbery attempt and he is guilty of first degree murder and every other charge.
>
> See that sign that says: 'We who labor here seek only truth?' The truth is that he is guilty. He is absolutely guilty under the facts and the law of this case and nothing that he says can change that. We're all counting upon you to return a verdict based on the law.

(Trial Transcript at 1506-07). No objection was made to the comments. <u>Id</u>. Vilme claims here, as he did on direct appeal, that the comments improperly shifted the burden of proof to the defense and did not hold the jury to the requisite standard of proof beyond a reasonable doubt. He further argues that the error was exacerbated when the prosecutor alerted the jury to the sign in the courtroom and then read it to the jury.

The purpose of closing argument is to explain to the jury what it has to decide and what evidence is relevant to its decision. <u>See United States v. Iglesias</u>, 915 F.2d 1524, 1529 (11 Cir. 1990). Closing argument is intended to assist the jury in analyzing, evaluating and applying the evidence. <u>United States v. Johns</u>, 734 F.2d 657, 663 (11 Cir. 1984). The jury's decision is to be based upon the evidence presented at trial and the legal instructions

given by the court. See Chandler v. Florida, 449 U.S. 560, 574 (1981)("Trial courts must be especially vigilant to guard against any impairment of the defendant's right to a verdict based solely upon the evidence and the relevant law."). See also Ward v. State, 765 So. 2d 299, 300 (Fla. 5 DCA 2000)("most of the prosecutor's comments were 'fair comment' on the defense counsel's closing argument"); Laboo v. State, 715 So. 2d 1034, 1035 (Fla. 1 DCA 1998)(prosecutor's comments to be viewed in context of all the evidence presented and the initial arguments of defense counsel).

In considering a claim that the prosecutor's comments to the jury during closing argument violated the petitioner's right to a fair trial, federal habeas corpus review is "the narrow one of due process, and not the broad exercise of supervisory power." Donnelly v. DeChristoforo, 416 U.S. 637, 642 (1974); Romaine v. Head, 253 F.3d 1349, 1366 (11 Cir. 2001)(citing Brooks v. Kemp, 762 F.2d 1383, 1403 (11 Cir. 1985)(en banc)("A permissible argument, no matter how 'prejudicial' or 'persuasive,' can never be unconstitutional."), vacated on other grounds, 478 U.S. 1016 (1986), reinstated, 809 F.2d 700 (1987)(en banc)).[18] While a prosecutor may not go beyond the evidence before the jury, he is not limited to a bare recitation of the facts; he may comment on the evidence, and state his contention as to the conclusions the

---

[18]To amount to a constitutional violation, the prosecutor's remarks must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 644 (1974). In assessing whether the fundamental fairness of the trial has been compromised, the totality of the circumstances are to be considered in the context of the entire trial, Hance v. Zant, 696 F.2d 940 (11 Cir.), cert. denied, 463 U.S. 1210 (1983); and "[s]uch a determination depends on whether there is a reasonable probability that, in the absence of the improper remarks, the outcome of the trial would have been different." Williams v. Weldon, 826 F.2d 1018, 1023 (11 Cir.), cert. denied, 485 U.S. 964 (1988). Federal case law regarding closing argument is the same as Florida law, see e.g., Darden v. Wainwright, 477 U.S. 168, 179-183 (1986)(quoting Donnelly, 416 U.S. at 643). See Ford v. State, 2001 WL 1044912, *3 (Fla. 2001)(holding that a mistrial based on prosecutorial comments is appropriate only where a statement is so prejudicial that it vitiates the entire trial).

jury should draw from the evidence. <u>United States v. Johns</u>, 734 F.2d at 663.

The prosecutor's argument in the instant case, viewed in light of the trial as a whole, did not result in a fundamentally unfair proceeding. Contrary to Vilme's assertion, the now-challenged remarks did not mislead the jury as to the burden of proof and/or in any way shift the burden of proof to the defense, which is clearly improperly under both federal and state law principles. <u>See e.g.</u>, <u>Duncan v. Stynchcombe</u>, 704 F.2d 1213, 1215-16 (11 Cir. 1983); <u>United States v. Downs</u>, 615 F.2d 677, 679 (5 Cir. 1980); <u>Jackson v. State</u>, 575 So.2d 181 (Fla. 1991)(when arguing to the jury, the State may not make comments that mislead the jury as to the burden of proof); <u>Atkins v. State</u>, 878 So.2d 460 (Fla. 3 DCA 2004)(state improperly shifted the burden of proof when it implied that the defendant needed to prove that the victim was lying in order to receive acquittal); <u>Northard v. State</u>, 675 So.2d 652, 653 (Fla. 4 DCA 1996)(prosecutor's argument was impermissible because it asked the jury to determine who was lying as the proper test of determining guilt).

Further, the comments were clearly fair comment on the law and evidence presented and were made in direct response to the defense's theory that Vilme should not be held criminally responsible for the acts of codefendant Cajuste, especially those which he claimed exceeded the attempted robbery (i.e., felony murder and attempted murder). It is noted that as to the reading of the sign to the jury, it was trial counsel during his closing argument who first pointed out the sign to the jury and read it to them. <u>See</u> Trial Transcript at 1463 (stating, "We're in a place called the Justice Building. That is a very important word when you think about it. The word justice. A building dedicated to justice.

The sign says: 'We who labor here seek only truth.' That's why we're here, seeking justice and seeking truth."). Additionally, the trial court clearly and correctly instructed the jury that what the lawyers said during opening statement and closing argument was not evidence in the case and should not be considered as such, and that the case must be decided only upon the evidence presented at trial. See Trial Transcript at 459, 1462, 1549. The court also clearly and correctly instructed the jury that Vilme was presumed innocent, that the state carried the burden of proof and that the defense had no burden whatever.[19] Id. at 1543-45. Thus, there is no reasonable probability that the result of the trial would have been different if the now-challenged argument had not occurred. It is generally presumed that jurors follow their instructions. See, e.g., Richardson v. Marsh, 481 U.S. 200, 211 (1987).

Accordingly, the state appellate court's rejection on direct appeal of Vilme's claim regarding the prosecutor's remarks made during closing argument was factually reasonable and in accordance with applicable federal principles, and its result should not be disturbed. 28 U.S.C.§2254(d)(1); Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

### C. Ineffective Assistance of Trial Counsel

Vilme claims that he received ineffective assistance of trial counsel for three enumerated reasons. To prevail on a claim of ineffective assistance, a petitioner must demonstrate both that his attorney's efforts fell below constitutional standards, and that he

---

[19]In fact, the prosecutor reminded the jury throughout his closing argument that the burden of proof in the case was proof beyond a reasonable doubt, that the burden rested with the state, and that the case must be decided solely on the evidence and the law. See Trial Transcript at 1488, 1491, 1500, 1504.

suffered prejudice as a result.[20] <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). A habeas court's review of a claim under the *Strickland* standard is "doubly deferential." <u>Knowles v. Mirzayance</u>, ___ U.S. ___, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009), *citing*, <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003)(per curiam). The relevant question "is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable-a substantially higher threshold." <u>Knowles</u>, 129 S.Ct. at 1420. (citations omitted). Finally, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." <u>Id</u>.

Vilme claims in **ground two** that his trial counsel rendered ineffective assistance when he conceded his guilt during opening statement to the underlying felony of felony-murder and the charge of attempted robbery and, by doing so, he was wrongly convicted of felony murder.[21] This claim is meritless. Conceding a client's guilt

---

[20]When assessing a lawyer's performance, "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." <u>Chandler v. United States</u>, 218 F.3d 1305 (11 Cir. 2000)(en banc), <u>cert</u>. <u>denied</u>, 531 U.S. 1204 (2001). The court's role in reviewing ineffective assistance of counsel claims is not to "grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within "the wide range of professionally competent assistance." <u>Van Poyck v. Florida Dept. of Corrections</u>, 290 F.3d 1318, 1322 (11 Cir.), <u>cert</u>. <u>denied</u>, 537 U.S. 812 (2002), <u>quoting</u>, <u>Strickland v. Washington</u>, 466 U.S. 668, 690. Review of counsel's conduct is to be highly deferential. <u>Spaziano v. Singletary</u>, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. <u>White v. Singletary</u>, 972 F.2d 1218, 1220 (11 Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); <u>Atkins v. Singletary</u>, 965 F.2d 952, 958 (11 Cir. 1992). A claim of ineffective assistance is a mixed question of law and fact. <u>Strickland</u>, 466 U.S. at 698.

[21]Trial counsel stated in pertinent part as follows during opening statement:

can be a reasonable trial strategy. <u>See</u> <u>Florida v. Nixon</u>, 543 U.S. 175 (2004). When counsel's strategy, given the evidence bearing on the defendant's guilt, is in his client's best interest and when the *Strickland* standard is satisfied, no tenable claim of ineffective assistance remains even where a defendant did not expressly consent to the strategy. <u>Id</u>. <u>See also</u> <u>United States v. Thomas</u>, 417 F.3d 1053, 1058-59 (9 Cir. 2005)(holding that defense counsel's concession of defendant's guilt of robbery charge on which evidence of guilt was overwhelming, in order to enhance defendant's credibility while attempting to avoid conviction on other charges of which there was less clear evidence and which carried greater penalty, did not rise to level of an entire failure to subject prosecution's case to meaningful adversarial testing, such that counsel's performance, assuming that it was deficient, was presumptively prejudicial for Sixth Amendment purposes).

Review of the trial court proceedings demonstrates that defense counsel presented the best possible defense under the circumstances of this case. Full review of trial counsel's opening statement and closing argument reveals that counsel merely argued

---

In this case we have to wait until the very end before you can make your judgments about what Edson Vilme did and what Edson Vilme did not do. Let me be very direct with you. Right now an innocent man was killed. That is the ugly – ugly truth an innocent man was killed. Edson Vilme did go into that business with the intention to commit a robbery. That is the bad part of the story for Edson Vilme. He did do something wrong. He did go in there with the intentions of committing a robbery. The evidence will show you, however, that Edson Vilme is no killer. He may be many things. He may be naive, stupid, foolish, a perfect dupe, but he is not killer. The moment that the gun man – the moment that the gun man, Michael Cajuste, fired his first shot in the air, Edson Vilme said to himself, 'hey I didn't sign up for this.' He wanted no part of this and he immediately tried to leave before anybody was shot, before anybody was hurt. Edson Vilme, tried to get out. And that is the good from Edson Vilme's perspective. He had no part in the murder. He had no part in the attempted murder. He had already abandoned the crime and you will hear from the witnesses who were inside the business – you are going to have to listen very carefully and it's going to come out slowly, but when you hear all the people who were there, you will find that what I'm telling you is exactly what happened. Edson Vilme was a young man, dupe into a plan to stead. A young man who is not guilty of murder.

(Trial Transcript at 492-93).

the facts and the law based upon the evidence presented at trial, which included unequivocal evidence from the victims and codefendant Salomon that Vilme was present at the scene of the armed robbery and participated in the attempted armed robbery. The theory of the defense at trial was that Vilme agreed to participate in the robbery of the Sea Linton business, which scheme had been initiated and planned by Cajuste, but he did so believing that no violence would occur. And, because of such belief, Vilme should be found not guilty of first-degree murder and two counts of attempted murder for his co-defendant's "independent" acts. To suggest to the jury that Vilme had not been engaged in any unlawful behavior whatever would have been totally contrary to the overwhelming evidence at trial.

Further, in light of the testimony of the victims and Salomon, it is apparent that defense counsel's theory was sound, amounting to proper trial strategy, even if Vilme did not consent to such a strategy.[22] Here, by conceding that Vilme committed at most the crime of attempted robbery, he was able to achieve credibility with the jury, question other evidence presented by the state regarding the offenses of felony murder and attempted murder, and attempt to persuade the jury to find Vilme not guilty as to the more serious offenses which carried life sentences. See Harich v. Dugger, 844

---

[22]As indicated, scrutiny of an attorney's performance is highly deferential. Reviewing courts will not second-guess strategic decisions; rather, the attorney's performance is evaluated in light of all the circumstances as they existed at the time of the conduct, and is presumed to have been adequate. Strickland v. Washington, 466 U.S. 668, 689-90 (1984). Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. Id. at 690-91. Even if in retrospect the strategy to pursue one line of defense over another appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it. Adams v. Wainwright, 709 F.2d 1443, 1145 (11 Cir. 1983). Accordingly, tactical or strategic choices by counsel cannot support a collateral claim of ineffective assistance. United States v. Costa, 691 F.2d 1358 (11 Cir. 1982); Coco v. United States, 569 F.2d 367 (5 Cir. 1978).

F.2d 1464, 1470 (11 Cir. 1988)(stating that competent trial counsel
know that reasonableness is absolutely mandatory if one hopes to
achieve credibility with the jury), <u>cert</u>. <u>denied</u>, 489 U.S. 1071
(1989), <u>overruled on other grounds</u>, <u>Davis v. Singletary</u>, 119 F.3d
1471, 1482 (11 Cir. 1997).  <u>See</u> <u>McNeal v. Wainwright</u>, 722 F.2d 674,
675-76 (11 Cir. 1984)(holding that defense counsel's argument in
first-degree murder prosecution without defendant's which suggested
that defendant was "at best" guilty of manslaughter was made as a
proper tactical decision, not amounting to unconstitutional
representation).

During closing argument, trial counsel vigorously argued that
Vilme had not been involved in the other charged crimes and that
once the robbery had failed, he had withdrawn from the robbery
scheme and such withdrawal occurred before Cajuste pulled out a gun
and began shooting. <u>See</u> Trial Transcript at 1466-67, 1520-23. Trial
counsel clearly and forcefully argued that the jury should not find
Vilme criminally responsible for  the shootings of Bernard Augustin
and Mario Mentor, committed by Cajuste, and the attempted murder of
Tom Smith, which was committed by Claudia Salomon when she tried to
strike Smith with the getaway car. Trial counsel was successful as
to the charge of attempted murder of Smith. Consequently, defense
counsel did not render constitutionally ineffective assistance of
counsel, as alleged in ground two.  The fact that the jury chose to
find Vilme guilty of first-degree felony murder of Mario Mantor and
attempted felony murder with a firearm of Ordrof Augustin, as well
as the attempted robbery, does not indicate that trial counsel
rendered ineffective assistance of counsel. It was the prerogative
of the jury, it chose to believe the strong evidence admitted by
the state and the testimony of the state witnesses.  <u>See</u> <u>Wilcox v.</u>
<u>Ford</u>, 813 F.2d 1140, 1143 (11 Cir. 1987).  Contrary to Vilme's
apparent assertion, the result of the trial was not fundamentally

unfair or unreliable. <u>See</u> <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369-70 (1993). The fact that the defense presented at trial was not successful does not mean that counsel's performance was constitutionally ineffective. Defense counsel did not entirely fail to subject the prosecution's case to meaningful adversarial testing.[23] <u>United States v. Cronic</u>, 466 U.S. 648, 659 (1984).

Vilme claims in **ground six** that trial counsel rendered ineffective assistance, because he failed to strike certain prospective jurors for cause.[24] The identical claim was raised and rejected by the trial court in the Rule 3.850 proceeding in which the trial court stated in pertinent part as follows in its order of denial:

---

[23]It appears that Vilme might be attempting to raise a claim pursuant to <u>United States v. Cronic</u>, 466 U.S. 648 (1984). In some cases, counsel's failure or inability to subject the prosecution's case to meaningful adversarial testing violates the Sixth Amendment and makes the adversarial process presumptively unreliable. <u>Id</u>. at 659. When such a violation occurs, so as to render the trial presumptively unreasonable, no specific showing of prejudice is required. <u>Id</u>. The Eleventh Circuit applies the <u>Cronic</u> dicta only in a "narrow range of cases" where there is a "fundamental breakdown of the adversarial process," <u>Chadwick v. Green</u>, 740 F.2d 897, 900-01 (11 Cir. 1984), and concentrates instead on whether or not the accused was denied a fair trial. <u>Hammonds v. Newsome</u>, 816 F.2d 611, 613 (11 Cir. 1987). In this case, Vilme was in no way denied a fair trial. As indicated herein, the record demonstrates that counsel subjected the state's case to a meaningful challenge.

[24]It is axiomatic that an accused is guaranteed the right to a fair trial by a panel of impartial and indifferent jurors. <u>Irvin v. Dowd</u>, 366 U.S. 717, 722(1961). <u>See also</u> <u>Ross v. Oklahoma</u>, 487 U.S. 81, 85 (1988) ("It is well settled that the Sixth and Fourteenth Amendments guarantee a defendant on trial for his life the right to an impartial jury."). However, even in a case where a juror is not struck for cause, but arguably should have been, a petitioner is not entitled to relief unless the disqualifying fact was so prejudicial that the refusal deprived the petitioner of a fundamentally fair trial. <u>See</u> <u>Passman v. Blackburn</u>, 652 F.2d 559, 567 (5 Cir. 1981), <u>cert</u>. <u>denied</u>, 455 U.S. 1022 (1982). <u>But see</u> <u>Johnson v. Armontrout</u>, 961 F.2d 748, 755 (8 Cir. 1992)(holding that absent the showing of a strategic decision, failure to request the removal of a biased juror can constitute ineffective assistance of counsel). In Florida, the test for whether a juror is competent is "whether the juror can lay aside any bias or prejudice and render his [or her] verdict solely upon the evidence presented and the instruction on the law given to him [or her] by the court." <u>Turner v. State</u>, 645 So.2d 444, 446 (Fla. 1994). Similarly, in the federal courts, a juror can be dismissed when just cause exists (i.e., when that juror refuses to apply the law or to follow the court's instructions). <u>See generally</u> <u>United States v. Abbell</u>, 271 F.3d 1286, 1302 (11 Cir.2001), <u>cert</u>. <u>denied</u>, 537 U.S. 813 (2002).

43

...Vilme has personally waived this argument. Vilme was specifically colloquied at the end of jury selection and agreed with the panel as selected. (T. 413-417 attached as Exhibit A). The following day, the defense exercised another strike after the panel was excused, necessitating an alternate to be seated. Vilme was colloquied again and then agreed to the jury as is. (T. 445-53 attached as Exhibit B). Another juror was seated. Vilme still had peremptory challenges remaining. Therefore, he waived any argument regarding these jurors. (citations omitted).

Vilme's allegations regarding the qualifications of five other jurors are also insufficient for relief. (citation omitted). There is no entry on the transcript from Mr. Nelson as Vilme alleged on page 175. (T. 175 attached as Exhibit C). Ms. Johnson stated that she would have to hear the facts before deciding whether an independent act instruction applied and she understood and agreed that the State had the burden of proof. (T 381-83 attached as Exhibit D). Ms. Johnson also stated that if she had a reasonable doubt she would find Vilme not guilty. (T. 383). Lastly, Ms Johnson demonstrated during the entire voir dire proceeding that she was paying attention to the proceedings, including discussions regarding the applicable law. (T. 338-344 attached as Exhibit E). There is no evidence in the record that she failed to pay attention during the trial. Mr. Nickel [a law school graduate who was then a law clerk to a judge] said his work as a law clerk would not affect him. (T. 247 attached as Exhibit F). He wanted to fulfill his civic duty. (T. 339-341 attached as Exhibit G). Mr. Nickel stated that he _may_ have worked on something once for Judge Rodriguez, but if he did, he had no recollection of it. There is no evidence in the record that he knew anything about this case. He presumed Vilme innocent. (T. 345-348 attached as Exhibit H). Mr. Morales correctly responded that when a criminal runs someone over while trying to escape a felony that it is murder. (T. 197-198 attached as Exhibit I). Although Mr. Morales wondered why someone would be stopped by the police, he stated that he would set aside any feelings he had and presume him innocent. (T. 345-348 attached as Exhibit J). The vague claim that Mr. Guaty _may_ have been influenced because he was a victim of a crime, does not justify a challenge for cause. (T. 234-235 attached as Exhibit K). Mr. Gauty simply stated that he didn't call the police after a past burglary. He later explained that he could be fair even though a relative was prosecuted for a crime in Miami-Dade County. (T. 260 attached as Exhibit L). Mr. Gauty assured defense counsel that he would hold the State to its burden in this case. (T. 339 attached as Exhibit M). In further support of this Court's ruling denying relief as to claim one, pages 338-344 are attached as Exhibit N. In sum, these jurors were not subject to a cause challenge.

(emphasis supplied)(Order Denying Post Conviction Petition at 2-3).

Vilme has failed to demonstrate that by allowing any or all of the subject jurors to serve on the jury counsel impinged upon the fundamental fairness of his trial. The record reveals that none of the contested jurors displayed any personal bias against Vilme and there is no indication that they were not otherwise competent to serve as jurors. As properly determined by the trial court in the Rule 3.850 proceedings, it is apparent from the responses given during *voir dire* that the now-challenged jurors could be fair and impartial, that they could follow the law as instructed by the court, and that they had no fixed belief in Vilme's guilt. A challenge for cause or use of a peremptory strike was, therefore, not warranted. <u>See generally</u> <u>Crawford v. State</u>, 805 So.2d 997 (Fla. 2 DCA 2001).

Further, as noted by the trial court in the Rule 3.850 proceeding, Vilme was present for jury selection, and he indicated on the record during questioning by the court that he agreed with the jurors selected. <u>See</u> Transcript at 413-417, 445-53. Thus, even if Vilme had merely acquiesced to counsel's selections, counsel's actions did not produce an impartial jury or result in constitutional error in that an incompetent juror had been selected. It is further pointed out that after the jury had arrived at its verdict, the jury was polled at the request of trial counsel. <u>Id</u>. at 1573. The court addressed the jury and asked as each name was called to respond with a "yes" if the verdict just read was his or her verdict. <u>Id</u>. All jurors responded with a "yes." <u>Id</u>.

Finally, since the strong direct and circumstantial evidence admitted in this case supported Vilme's convictions, he suffered no

prejudice as a result of the alleged inaction. See Baldwin v. Johnson, 152 F.3d 1304, 1315 (11 Cir. 1998)(holding that defense counsel's failure to challenge prosecutor's use of peremptory strikes did not constitute ineffective assistance of counsel since such decision was reasonable under law which existed at the time, and defendant failed to show prejudice in that there was overwhelming evidence of guilt), cert. denied, 526 U.S. 1047 (1999). Accordingly, the record does not demonstrate ineffective assistance from his lawyer with regard to the jury here. Defense counsel's action, or inaction, will not support a claim of ineffective assistance. Strickland, supra. And, as to any prospective jurors that did not ultimately sit on the jury, there is no constitutional violation. Claims that the jury was not impartial must focus on the jurors who actually sat. See Ross v. Oklahoma, 487 U.S. 81, 86 (1988)(holding that even if a veniremember should have been struck for cause there is no constitutional violation where the biased veniremember does not eventually sit on the jury); Heath v. Jones, 941 F.2d 1126, 1133 (11 Cir. 1991)(holding that habeas petitioner can only raise the trial court's denials of challenges for cause of those venire members who eventually sit on the jury), cert. denied, 502 U.S. 1077 (1992).

Vilme claims in **ground seven** that he received ineffective assistance of counsel when counsel failed to call co-defendant Cajuste as a witness. The trial court found this claim meritless in the Rule 3.850 proceeding, stating as follows:

> Mr. Cajuste gave a sworn statement that inculpated Vilme in the felony murder.[25] (record reference omitted). Additionally, it is unreasonable to believe Cajuste was available to testify, since his own trial on the same charges was pending.

---

[25]See Cajuste's Sworn Statement. (DE# 11; App. Y).

> Therefore, trial counsel was not incompetent by failing to
> call Cajuste as a defense witness.

(Order Denying Post Conviction Petition at 3). The record indicates
that if Cajuste had been available and had testified at Vilme's
trial, he would have inculpated both Vilme and Salomon. There is no
reason to believe that Cajuste would have testified differently
from his sworn statement where he said that Vilme was an active and
willing participant in the crimes, that Vilme had his own gun when
he entered the business, and that Vilme pistol whipped Bernard
Augustin before Cajuste shot Bernard. See Sworn Statement of
Cajuste at 22. (DE# 11; App. Y). Such testimony would have
contradicted Salomon's more favorable testimony that Vilme had not
been armed before or during the robbery attempt. See Trial
Transcript at 1056. And, if Cajuste were to testify differently, he
certainly would have been impeached by the state with his earlier
sworn testimony, rendering his testimony incredible. In other
words, Cajuste's testimony at trial would have helped to convict
Vilme, not acquit him.

It is well settled that which witnesses to call at trial, if
any, is a strategy decision that should seldom be second guessed.
Conklin v. Schofield, 366 F.3d 1193, 1204 (11 Cir. 2004), cert.
denied, 544 U. S. 952 (2005). See also United States v. Guerra, 628
F.2d 410, 413 (5 Cir. 1980)("Complaints concerning uncalled
witnesses impose a heavy showing since the presentation of
testimonial evidence is a matter of trial strategy and often
allegations of what a witness would have testified to are largely
speculative"). Thus, even if Cajuste was available to testify at
trial, trial counsel's decision not to call him was a sound
strategic one not warranting habeas corpus relief in that he would
have offered little or no beneficial testimony and, more likely,
harmful testimony. Trial counsel did not render ineffective

assistance when he did not call Cajuste as a defense witness.

Vilme alleges in **ground nine** that counsel rendered ineffective assistance when he stipulated to competency findings and a discovery violation in his absence.[26] This claim is meritless, as refuted by the record. As to Vilme's mental competence to proceed to trial, the record reveals that the trial court appointed Sanford Jacobson, M.D., a psychiatrist, to evaluate Vilme's competency to proceed to trial. See Letter from Dr. Jacobson to Honorable Jose Rodriguez, Miami-Dade County Circuit Court Judge, dated June 4, 2002. (DE# 11; App. Z). After a thorough mental status examination, Dr. Jacobson concluded that Vilme was competent to proceed, he did not qualify for involuntary psychiatric hospitalization, and there was no need to prescribe antidepressant medications. Id. Trial proceedings commenced not long after in August 2002, and there is no indication whatever in the record that Vilme's mental health status changed from the time he was found competent. Even if Vilme was entitled to be present during any proceeding involving his competency and he did not waive his presence, conducting the presence in his absence was harmless error. See e.g., United States

---

[26]The right of an accused to be present and participate during all critical stages of the trial is basic and fundamental. United States v. Gagnon, 470 U.S. 522, 526 (1985); Rushen v. Spain, 464 U.S. 114, 117 (1983). A defendant is guaranteed the right to be present at any stage of the criminal proceedings that is critical to its outcome if his presence would contribute to the fairness of the procedure. Kentucky v. Stincer, 482 U.S. 730, 745 (1987). In Florida, those stages include pretrial conferences, if not waived, all proceedings before the court when the jury is present, and when evidence is addressed to the court out of the presence of the jury for the purpose of laying the foundation for the introduction of evidence before the jury selection. See Fla.R.Crim.P. 3.180(a)(4), (5), (6). See also Fla.R.Crim.P. 3.220(p). However, a defendant has no constitutional right to be present for proceedings involving purely legal matters. See In re Shriner, 735 F.2d 1236 (11 Cir. 1984)(holding that there is no constitutional right to be present at the bench during conferences that involved purely legal matters). See also United States v. Burke, 345 F.3d 416 (6 Cir. 2003)(finding no constitutional right to be present at pretrial suppression hearing); Provenzano v. Singletary, 3 F.Supp.2d 1353, 1377 (M.D.Fla. 1997)(holding that hearing on motion to dismiss and suppression hearing "involved essentially legal argument, and there was no constitutional right to be present at such proceedings.").

v. Watkins, 983 F.2d 1413, 1419 (7 Cir. 1993); Dewitt v. McDonough,
2006 WL 2850101, 23 (M.D.Fla. 2006), citing, Henry v. State, 114
So. 523 (1927)(holding that defendant's possible voluntary absence
from courtroom when verdict was returned held not to vitiate
criminal trial). Accordingly, trial counsel did not render
constitutionally ineffective assistance when he either took no
further action with regard to Vilme's competency to proceed to
trial and/or when he stipulated to the reports regarding Vilme's
competence in Vilme's absence. See Strickland, supra.

Vilme further argues that counsel was ineffective when counsel
agreed to a discovery violation when he was not present at the
proceeding. Review of the record reveals that it was the state that
was asserting a discovery violation regarding late-added witnesses
to the defense witness list. (DE# 11; App. AA). After a proceeding
conducted pursuant to Richardson v. State, 246 So.2d 771 (Fla.
1971)(holding that where discovery rules are violated, a trial
court should conduct a hearing to determine the fairness and
prejudice to the party of allowing use of the undisclosed evidence
at trial), the state withdrew its objection to most, if not all,
the subject witnesses. Vilme again has failed to demonstrate how
his absence, even if involuntary, resulted in any prejudice to him.
Since Vilme suffered no prejudice in that he cannot show that there
is a reasonable probability that, but for the alleged errors, the
result of the proceeding would have been different, trial counsel's
performance cannot be deemed constitutionally ineffective.
Strickland, 466 U.S. at 694.

Vilme alleges in **ground fifteen** that trial counsel rendered
ineffective assistance when he failed to pursue a duress defense

and request a jury instruction on duress.[27] Vilme claims that, because codefendant Cajuste was armed, he and codefendant Salomon believed that their lives were in danger and they had no choice but to comply with Cajuste's demands and proceed with the crimes. This claim is meritless for the reasons expressed by the trial court in its order denying the Rule 3.850 motion, which states in pertinent part as follows:

> There is no evidence in the record that Vilme acted under duress. Moreover, Vilme gave a sworn statement in which he admitted that he intended to commit the robbery without ever mentioning duress. Instead, he seemed to claim withdrawal in his formal statement to the police. A copy of the statement [footnote omitted] is attached as Exhibit W.[28] The partial excerpt quoted in Vilme's Post Conviction Petition is taken out of context. His claim of duress is refuted by the eye witness testimony and Cajuste's statement.[29] They testified that Vilme was an active and willing participant in the crime. According to Cajuste's statement, Vilme had his own gun when he entered the business and Vilme was pistol whipping Bernard Augustin with it when Cajuste shot him. See Statement of Cajuste at page 22.

(emphasis supplied)(Order Denying Post Conviction Petition at 6). Trial counsel did not render ineffective assistance when he did not pursue such a defense in that it was clearly not supported by the

---

[27]In Florida, the defense of duress or coercion exists when there is evidence tending to show that the defendant committed the crime against his will because of circumstances which either constituted a real, imminent and impending danger to himself or to some loved one, or from which circumstances shown in evidence the defendant had reasonable grounds to believe that such danger was real, imminent and impending, and did so believe at the time the crime was committed, and therefore committed the crime because of such belief. Stevens v. State, 397 So.2d 324, 325 (Fla. 5 DCA 1981). Duress is not a defense to murder; see Wright v. State, 402 So.2d 493 (Fla. 3 DCA 1981)(holding that duress is not available as a defense to intentional homicide); however, under certain circumstances it may be a defense to a felony murder charge. See Wright, 402 So.2d at 498 n.8.

[28]The sworn statement of Vilme can be found here at DE# 11; App. BB.

[29]The sworn statement of Cajuste can be found here at DE# 11; App. Y.

record here. The law does not require counsel to raise every available nonfrivolous defense. See Knowles v. Mirzayance, 129 S.Ct. at 1420-22 (stating that Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success).

Thus, the appellate court's affirmance on direct appeal of Vilme's convictions, where the ineffective assistance of counsel claim raised here as ground two was presented, see Vilme v. State, 896 So. 2d 767. (Fla. 3d DCA 2004), and the trial and appellate courts' determinations that Vilme was not entitled to postconviction relief on his other claims of ineffective assistance of trial counsel, see Vilme v. State, 973 So.2d 1141 (Fla. 3 DCA 2007), are not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Relief must therefore be denied pursuant to 28 U.S.C. §2254(d). Williams v. Taylor, 529 U.S. 362 (2000). See also Knowles v. Mirzayance, ___ U.S. ___, 129 S.Ct. at 1420.

## D. Charging Document

Vilme claims in **ground sixteen** that he was denied due process when Count II and Count IV of the Indictment were wrongfully classified, resulting in unlawful sentences. Specifically, he argues that the charge of attempted felony murder with a deadly weapon was not a life felony, but a first degree felony punishable by life. He next argues that the attempted armed robbery was a second degree felony with a maximum sentence of fifteen years, and not a first degree felony with a maximum sentence of thirty years. This claim is frivolous in that Vilme received the requested relief during the postconviction proceedings. The trial court reduced Vilme's thirty-year sentence on the armed robbery to fifteen years,

51

and reduced the attempted felony murder charge to a first degree felony punishable by life. <u>See</u> Order Denying Post Conviction Petition at 7. Even when properly corrected, the concurrent life sentence was lawful and remained in effect. <u>Id</u>.

E. <u>Ineffective Assistance of Appellate Counsel</u>

Vilme alleges that he received ineffective assistance of appellate counsel on two specified grounds. As indicated above, to prevail on a claim of ineffective assistance, a petitioner must demonstrate both that his attorney's efforts fell below constitutional standards, and that he suffered prejudice as a result. <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). The two-prong <u>Strickland</u> test is equally applicable in assessing counsel's performance in appellate proceedings. <u>See</u> <u>Smith v. Robbins</u>, 528 U.S. 259, 285-86 (2000). <u>See also</u> <u>Grubbs v. Singletary</u>, 120 F.3d 1174, 1176 (11 Cir. 1997)(applying the <u>Strickland</u> test to a claim of ineffective assistance of appellate counsel). In <u>Jones v. Barnes</u>, 463 U.S. 745 (1983), the Supreme Court held that the Sixth Amendment does not require appellate attorneys to press every non-frivolous issue that the client requests to be raised on appeal, provided that counsel uses professional judgment in deciding not to raise those issues. In considering the reasonableness of an attorney's decision not to raise a particular claim, this Court must consider "all the circumstances, applying a heavy measure of deference to counsel's judgments." <u>Eagle v. Linahan</u>, 279 F.3d 926, 940 (11 Cir. 2001), <u>quoting</u>, <u>Strickland</u>, 466 U.S. at 691. Further, in determining whether the failure to raise a claim on appeal resulted in prejudice, the courts must review the merits of the omitted claim and, if it is concluded that the omitted claim would have had a reasonable probability of success, then counsel's performance was necessarily prejudicial because it affected the outcome of the appeal. <u>Eagle</u>, 279 F.3d at 943.

Under Florida law, "an error that passed without objection cannot be raised on appeal; appellate counsel, therefore, is not ineffective for failure to raise a meritless argument." Diaz v. Secretary for the Dept. of Corrections, 402 F.3d 1136, 1142 (11 Cir. 2005). See also Jackson v. Dugger, 931 F.2d 712, 715 n.7 (11 Cir. 1991)(noting that the "failure of trial counsel to object at trial bars appellate review."). The only exception to this rule is when the error constitutes a "fundamental error." Id. For an error to be "fundamental and justify reversal in the absence of a timely objection," it must be such that "a verdict of guilty could not have been obtained without the assistance of the alleged error." Porter v. Crosby, 840 So.2d 981, 984 (Fla. 2003)(internal quotation marks and citation omitted).

Specifically, he claims in **ground seventeen** that his lawyer improperly failed to raise on direct appeal the issue that the trial court committed fundamental error by not instructing the jury as to the underlying offenses of felony murder, and by not instructing the jury as to first degree premeditated murder. This claim is without merit. The Florida Supreme Court has held that the failure to instruct the jury as to an underlying felony is not fundamental error. Dobbert v. Florida, 456 So. 2d 424 (Fla. 1984)(holding that failure of trial judge to instruct on felony offenses underlying felony-murder did not constitute fundamental error), *citing*, Knight v. State, 394 So.2d 997, 1002 (Fla. 1981)(holding that where there was sufficient evidence of premeditation, the failure to give the underlying felony instruction, where it had not been requested, was not error which mandated a reversal absent a showing of prejudice). Thus, appellate counsel did not render ineffective assistance for failing to raise an unpreserved issue for appellate review which alleged error did

not constitute fundamental error as held by the Florida courts.
Diaz v. Secretary for the Dept. of Corrections, 402 F.3d at 1142;
Jackson v. Dugger, 931 F.2d at  715 n.7. See also Dobbert, 456
So.2d at 431 (holding that where failure of trial judge to instruct
on felony offenses underlying felony-murder did not constitute
fundamental error, appellate counsel's failure to raise that point
on appeal did not constitute ineffective assistance); Knight, 394
So.2d at 1002 (holding that  appellate counsel did not render
ineffective assistance when counsel failed to raise as error on
appeal of conviction of murder the trial counsel's failure to
instruct jury on elements of underlying felony).

    However, even if the issue had been preserved for appeal, and
appellate counsel's performance could be deemed deficient for
failing to raise the issue, Vilme is still not entitled to relief.
Vilme cannot demonstrate that he was prejudiced by the deficiency
in that the issue is meritless. Vilme was charged with first degree
premeditated murder, and the trial court properly instructed the
jury as to premeditated murder and the lesser included offenses.
See Trial Transcript at 1526-29, 1536-40. The trial court also
instructed the jury as to the elements of attempted felony murder.
Id. at  1529-30. While the court did not then instruct the jury as
to the underlying offense of attempted armed robbery, the court did
give the standard instructions and definitions of attempted armed
robbery later in its instructions. Id. at 1532-36. When the jury
found Vilme guilty of felony murder, it is apparent that it did so
based upon finding him guilty of the underlying felony charged in
Count IV, attempted armed robbery. Since Vilme's claim would not
have been successful on direct appeal, trial counsel did not render
ineffective assistance for failing to raise the subject claim. As
indicated herein, counsel has no duty to raise meritless
objections. See generally Knowles v. Mirzayance, 129 S.Ct. at

1421-22.  See also Chandler v. Moore, 240 F.3d 907, 917 (11 Cir. 2001)(counsel is not ineffective for failing to raise a non-meritorious objection); Card v. Dugger, 911 F.2d at 1520.

Vilme claims in his final ground for relief, **ground eighteen,** that he received ineffective assistance of appellate counsel, because his lawyer failed to raise on direct appeal the issue that the trial court committed fundamental error by entering a judgment of conviction for first degree murder solely based on a general jury verdict in that it could not be determined whether the jury found him guilty of first degree premeditated murder or felony murder. Here, Vilme was charged by Indictment with the first degree premeditated murder of Mario Mentor in violation of Fla.Stat. §782.04(1)(a). See Indictment at 1. (DE# 11; App. B). He was also charged as a principal pursuant to Fla.Stat. §777.011. Id. As indicated, the trial court instructed the jury as to first degree murder as well as first degree felony murder. See Trial Transcript at 1526-29, 1529-30. The court also instructed the jury as to the offense of attempted armed robbery. Id. at 1532-36.  Attempted armed robbery is properly one of the underlying felonies under the felony-murder theory. See Mungin v. State, 689 So.2d 1026 (Fla. 1995). The Verdict form indicates that the jury expressly found Vilme guilty of "First Degree Felony Murder." (Verdict at 1)(DE# 11; App. C).

The contention that a general guilty verdict that fails to differentiate between premeditated and felony murder is constitutionally inadequate has been rejected as meritless by the Supreme Court. In Schad v. Arizona, 501 U.S. 624, 631, 645 (1991), the Court held that the Constitution does not command separate verdict forms in cases submitted to a jury on alternative theories of premeditated and felony murder, while recognizing at the same

time that such separate verdict forms may be useful in cases
submitted to a jury on such alternative theories of premeditated
and felony murder. Thus, a general verdict in a first degree murder
case where allegedly inconsistent theories of first degree murder
had been presented does not render the jury's verdict
fundamentally flawed. Id. See also Sims v. Singletary, 155 F.3d
1297 (11 Cir. 1998)(finding jury need not agree on precise theory
of first degree murder, only the offense itself). While a general
guilty verdict must be set aside where the conviction may have
rested on an unconstitutional ground or a legally inadequate
theory, which is not the case here, reversal is not warranted where
the general verdict could have rested upon a theory of liability
without adequate evidentiary support when there was an alternative
theory of guilt for which the evidence was sufficient. Griffin v.
United States, 502 U.S. 46 (1991)(citations omitted); Mungin v.
State, 689 So.2d 1026, 1030 (Fla. 1995)(citing Griffin, supra).

Here, the trial court properly instructed the jury on the
elements of felony murder as applicable to this case, and there was
competent, substantial evidence showing that Vilme intended to rob
Sea Linkton and made an overt act directed toward the completion of
that crime. Accordingly, the evidence was sufficient to support a
conviction for felony murder based upon the underlying felony of
attempted robbery.[30] See Brooks v. State, 762 So.2d 879, 894-97
(Fla. 2000)(concluding that there was competent, substantial
evidence to support a jury verdict finding defendant guilty of
first-degree felony murder with attempted robbery as the underlying
predicate offense). See also Mungin, 689 So.2d at 1029 (finding
circumstantial evidence supported first-degree felony murder

---

[30]To prove attempted robbery, the state was required to present evidence
establishing beyond a reasonable doubt that Vilme intended to commit a robbery
and committed an overt act toward completion of that offense. See Fla.Stat
§777.04(1), 812.13. See also Brooks v. State, 762 So.2d 879, 897 (Fla. 2000).

conviction for robbery or attempted robbery).

The jury, therefore, properly convicted Vilme of first-degree murder on the theory of felony murder. Even if the verdict form had not specified whether the jury found him guilty of premeditated or felony first-degree murder, his conviction would be lawful. See San Martin v. State, 705 So.2d 1337, 1346 (Fla. 1997), citing, Brown v. State, 473 So.2d 1260, 1265 (Fla. 1985)("Neither constitutional principles nor rules of law or procedure require such special verdicts in capital cases."). Further, under Florida law, there is no error in permitting the state to proceed on a theory of felony murder even when the indictment solely charges the defendant with first-degree premeditated murder. Anderson v. State, 841 So.2d 390, 404 (Fla. 2003)(rejecting defendant's argument that the trial court erred in permitting the state to proceed on the theory of felony murder when the indictment only charged first-degree murder); Kearse v. State, 662 So.2d 677, 682 (Fla. 1995)("The State need not charge felony murder in an indictment in order to prosecute a defendant under alternative theories of premeditated and felony murder when the indictment charges premeditated murder."). Even if the subject verdict form could be considered as general verdict in that it did not differentiate between first degree premeditated murder and felony murder and the Indictment did not also charge felony murder in Count I, Vilme is not entitled to relief. Appellate counsel, therefore, did not render ineffective assistance when the issue was not raised on direct appeal. See Knowles v. Mirzayance, 129 S.Ct. at 1420-22; Card v. Dugger, 911 F.2d at 1520.

It is noted that the state appellate court in the state habeas corpus proceeding was the same court that had decided Vilme's direct appeal. By denying the state habeas corpus petition, the court implicitly found that the outcome of the direct appeal

proceedings would not have been different if appellate counsel had raised the subject issues on direct appeal. Thus, the state appellate court's denial of Vilme's petition for writ of habeas corpus, where the subject ineffective assistance of appellate counsel claims now raised in this federal petition were presented, is not in conflict with clearly established federal law or based on an unreasonable determination of the facts, and its result should not be disturbed. 28 U.S.C. §2254(d)(1); Williams v. Taylor, supra. See also Mitchell v. Esparza, 540 U.S. 12, 16 (2003)("[A] state court's decision is not 'contrary to ... clearly established Federal law' simply because the court did not cite [Supreme Court] opinions.... [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'")(quoting Early v. Packer, 537 U.S. 3, 7-8 (2002).

## VIII. Conclusion

It is therefore recommended that this petition for writ of habeas corpus be denied. It is further recommended that Petitioner's Motion to Stay Habeas Petition (DE# 13) be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

SIGNED this 17th day of November, 2009.

UNITED STATES MAGISTRATE JUDGE

cc:  Edson A. Vilme, <u>Pro</u> <u>Se</u>
     DC# M09966
     Dade Correctional Institution
     19000 S.W. 377th Street
     Florida City, FL 33034-6499

     Nikole Hiciano, AAG
     Department of Legal Affairs
     444 Brickell Avenue
     Suite 650
     Miami, FL 33131